SHELL PIPE LINE CORPORATION, Plaintiff,

v.

OLD BEN COAL COMPANY, Defendant.

Civ. No. 86–4082.

United States District Court, S.D. Illinois, Benton Division.

Jan. 14, 1988.

D. Simmons, Heyl, Royster, Voelker & Allen, P.C., Springfield, Ill., for plaintiff.

Richard Campbell, Campbell & DiVincenzo, Chicago, Ill., William W. Hart, Hart and Hart, P.C., Benton, Ill., Edmund J. Moriarty, Old Ben Coal Co., Legal Dept. 39–C, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on a Motion for Summary Judgment filed by defendant, Old Ben Coal Company (Old Ben). Plaintiff Shell Pipe Line Corporation (Shell) responded to the defendant's motion and renewed its earlier motion for summary judgment as well. This Court previously granted summary judgment in favor of defendant on a punitive damage count, leaving the statutory damage count as the sole remaining issue. Oral argument was presented by both sides on January 11, 1988.

### Factual Summary

Plaintiff Shell Pipe Line Corporation operates and maintains an oil pipeline, known as the Capline Pipeline, under a contract with the several oil companies who own the pipeline in partnership. The pipeline runs from St. James, Louisiana to Patoka, Illinois. After giving notice of its intent, defendant Old Ben Coal Company began extracting coal from beneath lands in this district where the pipeline runs using a rather new technology known as "longwall mining". This type of mining, unlike standard room and pillar coal mining, virtually guarantees subsidence of the land above where the coal is extracted.

In order to avoid the possibility that subsidence of the land would cause a rupture of the pipeline and catastrophic business and ecological damage, Shell undertook extensive preventative measures. All told, Old Ben completed four "longwall panels" which passed under the pipeline at some point. Shell submits that the preventative measures taken to counteract possible subsidence damage from all four panels cost in excess of $750,000.00. Shell claims that under the applicable state regulations, Old

Ben is liable for the costs of the preventative measures reasonably taken. Old Ben disclaims any such liability.

### Previous Court Decisions

In its summary judgment motion, Old Ben raises a number of arguments in an attempt to persuade the Court that no liability attaches to Old Ben in the situation present before the Court. A number of these arguments have been dealt with previously by the Court in similar but not identical circumstances.

In *Melvin v. Old Ben Coal Company (Melvin I)*, 610 F.Supp. 131 (S.D.Ill.1985) and *Melvin v. Old Ben Coal Company (Melvin II*, 612 F.Supp. 1204 (S.D.Ill.1985), this Court rejected several arguments advanced by Old Ben as reasons why no liability for subsidence damage from longwall mining could attach to the company. In short summary, the *Melvin* decisions held that: (1) longwall mining is a method of extracting coal which both the federal and state regulatory agencies view as acceptable and one which contemplates "planned subsidence" as referred to in various legislative and administrative laws and regulations; (2) a mining operation which utilizes longwall mining is not exempt from all the subsidence prevention and damage provisions of the Illinois Act and permanent mining reclamation program; (3) a mine operator which holds an interim mining permit is not exempt from the subsidence prevention and damage provisions of the permanent mining reclamation program even though no subsidence provisions existed in the interim program under which the operator's permit was granted; (4) the Illinois legislature, by enacting the Surface Coal Mining Land Conservation and Reclamation Act, "disturbed" prior Illinois case law on subsidence control, leaving waivers of surface support unenforceable when in conflict with the policy of the state regarding subsidence control.

In this case Old Ben has advanced the notion that several developments since the *Melvin* decisions warrant a reconsideration of the Court's previous rulings. Although the Court is not convinced that the *Melvin*

574

holdings are in any way contrary to various later developments, a decision in that regard is unnecessary in view of this Court's agreement with Old Ben's position on another distinct issue.

### Analysis

Old Ben argues that even if the *Melvin* holdings are still good law, the Illinois subsidence regulations promulgated under the permanent Act (Ill.Rev.Stat. ch 96–½, ¶ 7901.01 *et seq.*) do not subject Old Ben to liability where no actual physical damage to a structure occurred. This Court and the Illinois Department of Mines and Minerals (IDMM) agree with this position.

Shell argues that 62 Ill.Admin Reg. 1817.124 (1985) applies in this situation and mandates that Old Ben pay for preventative measures taken as damages due to subsidence. That particular regulation provides as follows:

Section 1817.124 SUBSIDENCE CONTROL: SURFACE OWNER PROTECTIONS

a) Each person who conducts underground mining activities shall adopt all measures approved by the Department under 62 Ill.Adm.Code 1784.20 to reduce the likelihood of subsidence, to prevent subsidence causing material damage, or reducing the value, or reasonably foreseeable use of surface lands, and to mitigate the effects of any such damage or reduction which may occur.

b) Each person who conducts underground mining which results in subsidence that causes material damage or reduces the value or reasonably foreseeable use of the surface lands shall, with respect to each surface area affected by subsidence:

1) Restore, rehabilitate, or remove and replace each damaged structure, feature or value, promptly after the damage is suffered, to the condition it would be in if no subsidence has occurred and restore the land to a condition capable of supporting reasonably foreseeable uses it was capable of supporting before subsidence; or

2) Purchase the damaged structure or feature for its fair market, presubsi-

dence value and shall promptly after subsidence occurs, to the extent technologically and economically feasible, restore the land surface to a condition capable and appropriate of supporting the purchased structure, and other foreseeable uses it was capable of supporting before mining. Nothing in this paragraph shall be deemed to grant or authorize an exercise of the power of condemnation or the right of eminent domain by any person engaged in underground mining activities.

c) Each person who conducts underground mining activities will compensate the owner of any surface structure in the full amount of the diminution in value resulting from subsidence, by purchase prior to mining of noncancellable, premium prepaid insurance policy or other means approved by the Department as assuring before mining begins that payment will occur; indemnify every person with an interest in the surface for all damages suffered as a result of the subsidence; and, to the extent technologically and economically feasible, fully restore the land to a condition capable of maintaining reasonably foreseeable uses which it could support before subsidence.

Shell relies on that part of subsection (c) which states that an operator must "indemnify every person with an interest in the surface for all damages suffered as a result of the subsidence." Old Ben argues that when read as a whole the regulation clearly addresses only physical damage which actually occurs. None of the regulations promulgated address the specific problem at hand according to Old Ben.

In January of 1985, after Old Ben had completed two of the four longwall panels, Shell wrote to the Illinois Department of Mines and Minerals asking that the Department help Shell in collecting the cost of preventative measures already taken and direct Old Ben to pay for similar costs in conjunction with the final two panels. The Department's response stated that although Old Ben was responsible for curing all physical damage which occurred as a result of its mining, it was excepted from

the prevention requirements of the Act and regulations because it was utilizing a planned subsidence method of extraction. Furthermore, the response indicated that so long as preventative measures were being taken by someone there was no imminent danger present and hence the regulatory provisions which would empower the department to halt mining where an imminent danger was present could not be invoked. According to IDMM this was a "situation for which no precedence has yet to be established nor can any clear cut intent of the regulations be drawn." Both Shell's letter and the response of IDDM were attached to defendant's summary judgment motion as Exhibit A and are appendant to this Memorandum and Order.

Like the IDMM this Court finds no clear cut responsibility on the part of an operator utilizing longwall mining to pay for damage prevention measures. Section 1817.124 of the state regulations, when read as whole, deals with specific physical or material damage. Section 1817.181, which Shell also relies on to support its claim, simply calls for an operator to minimize possible damage, destruction or disruption of any pipelines. In this case the pipeline remained unharmed.

The Court is not unsympathetic to the position Shell found itself in when confronted with possible subsidence damage from Old Ben's mining activity. There is no question that Shell should be commended for taking the action it did to insure against possible catastrophic results of subsidence damage, whether or not that action was prompted by contractual duties or a concern for the environment. However, as this Court stated in *Melvin II*, federal courts commonly give great deference to the statutory interpretation of an agency charged with the administration thereof. *Melvin v. Old Ben Coal Company*, 612 F.Supp. 1204, 1206 (S.D.Ill.1985). In this case, the agency does not find authority in the regulations for ordering Old Ben to pay for the preventative measures.

Whether the legislature and those who drafted the regulations meant for the imminent danger provisions to be the answer to the situation which confronted Shell or simply failed to take such a possibility into consideration is not apparent. One thing is certain, this Court is not about to embark upon a mission to rewrite or fill in the gaps of state legislation and regulations. Like the IDMM, this Court finds nothing within the framework of the mining regulations or applicable legislation which would allow it to find that Old Ben is required to pay for preventative measures taken by Shell. Consequently, Shell's action must fail. Perhaps the Illinois legislature will review the current legislation in light of the circumstances of this case. It would be a wise decision, for next time the company or individuals involved may not act as responsible as Shell and the results could be devastating.

Accordingly, defendant Old Ben Coal Company's Motion for Summary Judgment (Document No. 42) is hereby GRANTED. The Clerk is directed to enter judgment in favor of defendant and against plaintiff on plaintiff's Amended Complaint.

IT IS SO ORDERED.

576

## Shell Pipe Line Corporation

8600 North Michigan Road
P.O. Box 68000
Indianapolis, Indiana 46268

January 10, 1985

Illinois Department of Mines and Minerals
Land Reclamation Division
227 South 7th Street
Springfield, IL  62706

Gentlemen:

FRANKLIN COUNTY, ILLINOIS
WOOD RIVER DISTRICT
CAPLINE SYSTEM
B/M 2229-2232
COAL MINING

This is to request the assistance of the Illinois Department of Mines and
Minerals in recovering costs expended by Shell Pipe Line Corporation
(Shell), for itself and as operator of the Capline pipeline, to prevent
damages to the Capline pipeline which would have resulted from surface
subsidence due to long-wall coal mining operations under the pipeline by
Old Ben Coal Company (Old Ben).  This request is based on the authority
given to the State under the Illinois Surface Coal Mining Land
Conservation and Reclamation Act.

Old Ben Mine Number 26 is located in Section 32, Township 5 South,
Range 2 East, Franklin County, Illinois.  Shell operates and maintains a
40-inch common carrier crude oil pipeline across Section 32 pursuant to
easements obtained from various surface owners in 1967 which are recorded
in the Office of the Recorder of Franklin County.  The pipeline presently
transports 600,000 plus or minus barrels of crude oil daily from
St. James, Louisiana, to Patoka, Illinois, where the crude is then
delivered to several refineries in the area.

Old Ben is using the long-wall method of mining operations.  Mine 26's
Panel No. 1 and Panel No. 2 crossed under the pipeline and the
subsidence which occurred was of such magnitude that Shell had to control
the pipeline settlement to minimize stress changes in the pipeline.  This
settlement control was done by exposing the pipeline across both panels,
removing soil under the pipeline at some points and raising the pipeline
and adding soil at other points.  The total subsidence over Panel No. 1
was five feet and over Panel No. 2 was four and one-half feet.  The
subsidence occurred over a period of 35 days per panel; however,
50 percent of the subsidence occurred over a three-day period on each
panel.

Illinois Department of Mines and Minerals
Page 2

Shell has thus far incurred costs of $231,766.46 for the protective measures across Panel No. 1 and, as of this date, $209,453.28 for the protective measures across Panel No. 2. On January 9, 1984, Shell invoiced Old Ben for $51,174.23 as a partial billing of costs incurred for the pipeline protection across Panel No. 1. By letters dated January 26, 1984, and March 5, 1984, our claim for reimbursement was denied. On August 20, 1984, we again submitted our claim to Old Ben. As of this date, we have not had a response.

We understand that Old Ben plans to cross the pipeline with at least two more panels and, as was done with Panels No. 1 and No. 2, Shell will expose the pipeline across the panels, monitor the subsidence rate along and parallel with the pipeline, monitor the stress build-up in the wall of the pipeline and take corrective measures to reduce the stress on the pipeline during the peak rate of subsidence. Since Shell's engineers cannot predict the extent of future subsidence with certainty, the cost of these protective measures is likewise uncertain; however, based upon our experience with Panels No. 1 and No. 2, we estimate our future costs will be in the neighborhood of $440,000.00.

In view of the foregoing, we hereby call upon the Department to undertake the following measures pursuant to the authority granted the Department under the Illinois Surface Coal Mining Land Conservation and Reclamation Act:

1.  We request a field investigation of mining activities and operations undertaken by Old Ben which have necessitated corrective measures to protect the integrity of the pipeline, and we request further that such an investigation be conducted of Old Ben's plans for future panels that will cross under the pipeline.

2.  We hereby request that the Department recover from Old Ben on Shell's behalf the costs incurred in avoiding damage to the pipeline from Panels No. 1 and No. 2, namely $441,219.74.

3.  We request that Old Ben be directed to pay the costs of such protective measures as are necessary to protect the pipeline from subsidence to result from future mining operations undertaken by Old Ben.

Very truly yours,

Original Signed By
J. C. SWANK

J. C. Swank, Manager
Mid-Continent Division

LDS/mmk

Illinois Department of Mines and Minerals
Page 3

cc:  Mr. Lloyd I. Barger
     Vice-President
     Royal Land Company
     333 West Vine Street
     Lexington, KY  40507

     Mr. Jeffery C. Conrad
     The Standard Oil Company (Ohio)
     333 West Vine Street
     Lexington, KY  40507

STATE OF ILLINOIS
## DEPARTMENT OF MINES AND MINERALS
### LAND RECLAMATION DIVISION
January 25, 1985

227 SOUTH 7TH ST. — RM. 204
SPRINGFIELD, ILLINOIS 62706
TELEPHONE: (217) 782-4970

BRAD EVILSIZER
*Director*

J. C. Swank, Manager
Mid-Continent Division
Shell Oil Pipe Line Corporation
8500 North Michigan Road
Indianapolis, Indiana  46268

Dear Mr. Swank:

This correspondence is in response to your letter of January 10, 1985, requesting the Department's assistance in recovering costs incurred by Shell Pipe Line Corporation in protecting an oil pipeline from Old Ben Coal Company's mine operations.

The Department will attempt to address the many difficult issues raised by your company. As a background, some of the Department subsidence regulations must be explained.

Under the Illinois Surface Coal Mining Land Conservation and Reclamation Act (section 4.02) and its regulations (section 1817.121) coal operators are obligated to adopt measures to prevent subsidence damages, except where the mining method used requires planned subsidence in a controlled and predictable manner.  The Department believes that Old Ben as a result of their longwall operations qualifies for this exception.

Regardless of this exception, coal operators are responsible for the repair, restoration, or purchase at full pre-subsidence value all structural property materially damaged by subsidence.  Additionally, the Department may prohibit mining in areas in which subsidence could cause damage which may initiate a situation of imminent danger to inhabitants.  Given the proper circumstances it may be possible to equate the situation involving your pipeline and Old Ben's longwall as one of imminent danger, if preventive measures are not to be taken.

From the Department's perspective it would appear that as long as preventive measures, such as those taken to date are in operation a situation of imminent danger apparently would not exist.  The situation which appears to have developed is that because of actions taken by Shell the Department cannot prohibit mining nor require repair of material damage since none have been incurred to our knowledge.

Page 2

Unfortunately, your actions to prevent damage in lieu of Old Ben's taking such to ensure against an imminent danger claim, has created a situation for which no precedence has yet been established nor can any clear cut intent of the regulations be drawn. As a result, it would appear to the Department it would have no legal basis for stating that Old Ben has violated state regulations for not reimbursing Shell for past expenditures to prevent damage.

In regard to your specific requests itemized at the end of your letter the Department responds as follows:

1. The Department continually monitors all of Old Ben's mining activities. Presently, Old Ben's third sequential panel is actively subsiding the pipeline. It is the Department's interpretation that Old Ben intends to mine beneath the pipeline in a fourth panel projected for early 1986. What impacts this mining will have on the pipeline and what action will be taken by this Department will be dependent on the preventive measure, if any, which are in place to protect the pipeline.

2. The Department does not believe it has the authority to require Old Ben to reimburse Shell for past expenditures voluntarily incurred.

3. The Department does not believe it has the authority to direct Old Ben to pay for future preventive measures. The Department depending on circumstances may prohibit mining in situations of imminent danger, or cause the issuance of a notice of violation (NOV) to Old Ben for failure to mitigate material damage. Pending further failure to mitigate, a cessation order (CO) may be issued which could result in the suspension of mining operations. Should Shell's pipeline sustain material damage as a result of subsidence from Old Ben's mining operations, under Illinois regulations Old Ben would be liable.

If the Department can provide you with any additional information, please, do not hesitate to contact this office.

Sincerely,

Douglas Downing
Supervisor
Land Reclamation Division
Department of Mines and Minerals

DD:PE:lw
cc:  D. Hopson
     J. French
     P. Ehret
     Old Ben Coal Company

     K.A. Burke  1-28-85
Xc:  E. Moriarty  1-28-85
     JC Conrad  1-28-85
     TG. Norris  1-28-85
     SR Robertson  1-28-85