MCFEE; OHIO CIVIL RIGHTS COMMISSION, APPELLEE, *v.* NURSING CARE
MANAGEMENT OF AMERICA, INC., D.B.A. PATASKALA OAKS
CARE CENTER, APPELLANT.

[Cite as *McFee v. Nursing Care Mgt. of Am., Inc.*,
126 Ohio St.3d 183, 2010-Ohio-2744.]

*An employment policy that imposes a uniform minimum-length-of-service*
*requirement for leave eligibility with no exception for maternity leave is*
*not direct evidence of sex discrimination under R.C. Chapter 4112.*

(No. 2009-0756 — Submitted January 13, 2010 — Decided June 22, 2010.)

APPEAL from the Court of Appeals for Licking County, No. 08CA3000,
181 Ohio App.3d 632, 2009-Ohio-1107.

_____

SYLLABUS OF THE COURT

An employment policy that imposes a uniform minimum-length-of-service
requirement for leave eligibility with no exception for maternity leave is
not direct evidence of sex discrimination under R.C. Chapter 4112.

_____

CUPP, J.

**I**

{¶ 1} In this case, a pregnant employee who took maternity leave before
she was eligible under her employer's uniform minimum-length-of-service
requirements for leave eligibility of any kind was terminated for absence from her
job. We are asked whether the termination of that employee for violation of the
uniform leave policy is direct evidence of sex discrimination under Ohio law.

{¶ 2} For the reasons that follow, we hold that a uniform minimum-
length-of-service leave policy is not direct evidence of a violation of R.C.
4112.02(A). The judgment of the court of appeals is reversed.

## II

{¶ 3} Tiffany McFee was employed by appellant, Nursing Care Management of America, Inc., d.b.a. Pataskala Oaks Care Center ("Pataskala Oaks"). Upon hire, McFee received an employee handbook that contained Pataskala Oaks' employment policy. That policy required that an employee be employed for a period of one year before he or she would be eligible for any leave for any purpose.

{¶ 4} Approximately eight months later, McFee presented to Pataskala Oaks a doctor's note that stated that she was unable to work due to conditions related to pregnancy. Soon thereafter, McFee gave birth. Three days after the birth, McFee's employment was terminated. The basis for the termination was McFee's absence from her employment before she had become eligible for leave under the written employment policy.

{¶ 5} McFee filed a charge with the Ohio Civil Rights Commission, appellee, claiming that her termination constituted unlawful sex discrimination on the basis of pregnancy. An administrative law judge recommended that the charge be dismissed. Nevertheless, the Civil Rights Commission rejected that recommendation and found instead that Pataskala Oaks' policy constituted unlawful sex discrimination. Pataskala Oaks appealed.

{¶ 6} On review, the Licking County Common Pleas Court held that Pataskala Oaks' leave policy did not violate the antidiscrimination laws of Ohio and reversed the decision of the Civil Rights Commission.

{¶ 7} On further appeal, the Fifth District Court of Appeals reversed the judgment of the common pleas court. The court of appeals held that the antidiscrimination laws of Ohio expressly require that employers provide employees with a reasonable period of maternity leave. Because Pataskala Oaks' leave policy did not provide maternity leave for employees with less than one year of service, the court of appeals held that the policy violated the sex-

discrimination laws. The court also held that the policy was direct evidence of discrimination and, therefore, McFee did not have the burden to offer other evidence of sex discrimination. See *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

{¶ 8} Pataskala Oaks appeals here from the decision of the Fifth District. It asserts that (1) an employer's uniform minimum-length-of-service leave policy does not constitute direct evidence of a sex-discrimination violation, even when it is applied to employees who require leave for reasons related to pregnancy, (2) the laws in question cannot be interpreted to mandate maternity leave for employees who are not yet otherwise eligible for any leave, and (3) the *McDonnell Douglas* burden-shifting framework applies in cases alleging sex discrimination on the basis of pregnancy leave, thus requiring the claimant to offer evidence of discriminatory intent in a claim based on an employment policy that is nondiscriminatory on its face.

### III

{¶ 9} R.C. 4112.02(A) provides that pregnant employees must be treated the same for employment-related purposes as employees who are not pregnant but who are similar in their ability or inability to work. See also R.C. 4112.01(B). Because the Ohio Administrative Code Sections promulgated by the Civil Rights Commission must be harmonized with this policy preference of the General Assembly, a mandatory maternity-leave requirement is absent from Ohio Adm.Code 4112-5-05(G)(2). This means that a uniform minimum-length-of-service leave policy is not direct evidence of sex discrimination and the *McDonnell Douglas* burden-shifting analysis should be applied in cases involving such a policy.

*A. R.C. Chapter 4112 does not prohibit uniformly applied*

*minimum-length-of-service leave requirements.*

**{¶ 10}** McFee was terminated from employment because she took leave from her job before she was eligible under Pataskala Oaks' uniform leave policy. Regarding termination, R.C. 4112.02(A) provides: "It shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

**{¶ 11}** R.C. 4112.01(B) provides that the term "because of sex" in R.C. 4112.02(A) "include[s], but [is] not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions." The second sentence of R.C. 4112.01(B) directs that pregnant women "shall be treated the same for all employment-related purposes * * * as other persons not so affected but similar in their ability or inability to work."

**{¶ 12}** Read together, those statutes provide that it is an unlawful discriminatory practice for an employer to terminate an employee because of pregnancy or a related condition without just cause. Because R.C. 4112.02(A) allows an employer to terminate an employee for any nondiscriminatory reason and R.C. 4112.01(B) directs that pregnant employees be treated "the same for all employment-related purposes * * * as other persons not so affected but similar in their ability or inability to work," the statutes do not impose a per se ban on the termination of every employee affected by pregnancy.

**{¶ 13}** The phrase "treated the same" in R.C. 4112.01(B) ensures that pregnant employees will receive the same consideration as other employees "not so affected but similar in their ability or inability to work." Thus, the statute does not provide greater protections for pregnant employees than nonpregnant

4

employees. Other courts that have considered this issue have also applied this interpretation of R.C. 4112.01(B).

{¶ 14} The wording of the Ohio pregnancy-discrimination statute mirrors its federal counterpart, including the phrase "treated the same," which appears in both Section 2000e(k), Title 42, U.S.Code, and R.C. 4112.01(B). Decisions of federal courts provide guidance in interpretation of the Pregnancy Discrimination Act. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm*. (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

{¶ 15} Federal courts agree that "the Pregnancy Discrimination Act does not require preferential treatment for pregnant employees. Rather, it mandates that employers treat pregnant employees the *same* as nonpregnant employees who are similarly situated with respect to their ability to work." (Emphasis sic.) *Tysinger v. Zanesville Police Dept.* (C.A.6, 2006), 463 F.3d 569, 575. Accord *Mullet v. Wayne-Dalton Corp.* (N.D.Ohio 2004), 338 F.Supp.2d 806, 811; *Armstrong v. Flowers Hosp., Inc.* (C.A.11, 1994), 33 F.3d 1308, 1316-1317, and cases cited therein.

{¶ 16} Ohio courts have reached the same conclusion. As stated by the Tenth District Court of Appeals, "Ohio courts implicitly * * * and expressly * * * recognize that an employer need not accommodate pregnant women to the extent that such accommodation amounts to preferential treatment. Accordingly, to prevail on her pregnancy discrimination claim, plaintiff must show that defendant treated her differently because of her pregnancy." *Priest v. TFH-EB, Inc.* (1998), 127 Ohio App.3d 159, 165-166, 711 N.E.2d 1070.

{¶ 17} Pataskala Oaks' length-of-service requirements treat all employees the same. Every employee must reach 12 months of employment before becoming eligible for leave. In this sense, the policy is "pregnancy-blind." *Reeves v. Swift Transp. Co.* (C.A.6, 2006), 446 F.3d 637, 640-641. Thus, a pregnant employee may be terminated for unauthorized absence just like any

other employee who has not yet met the minimum-length-of-service requirement but takes leave based upon a similar inability to work. Unless there is other evidence of discrimination or pretext, R.C. Chapter 4112 does not prohibit termination of an employee affected by pregnancy under these circumstances.

{¶ 18} The Civil Rights Commission urges us to read the "treated the same" clause in the second sentence of R.C. 4112.01(B) as a separate provision with independent force and effect from the first sentence of the statute, prohibiting termination "because of or on the basis of pregnancy." The Civil Rights Commission argues that the second sentence is a narrower application of the general prohibition against firing employees because of pregnancy. We find this argument unpersuasive.

{¶ 19} First, we do not agree with the premise that McFee was terminated on the basis of pregnancy. Instead, she was let go for taking unauthorized leave from her employment. The second sentence of R.C. 4112.01(B) is directly applicable to this situation and directs that McFee must be treated the same for purposes of leave eligibility as other employees who are similar in their ability or inability to work. If McFee believes that the leave policy is merely a pretext for termination based upon pregnancy, she could have asserted that claim under the existing antidiscrimination framework of *McDonnell Douglas*.

{¶ 20} Second, the United States Supreme Court has held that the second clause of the Federal Pregnancy Discrimination Act (the treated-the-same clause) is an explanation and application of the first clause (the because-of-pregnancy clause) to provide concrete examples of prohibited practices. See *California Fed. S. & L. Assn. v. Guerra* (1987), 479 U.S. 272, 285, 107 S.Ct. 683, 93 L.Ed.2d 613, quoting *Newport News Shipbuilding & Dry Dock Co. v. Equal Emp. Opportunity Comm.* (1983), 462 U.S. 669, 678, 103 S.Ct. 2622, 77 L.Ed. 2d 89, fn. 14 (" 'The meaning of the first clause is not limited by the specific language in the second clause, which explains the application of the general principle to

women employees' "). It would be contrary to this interpretation of the federal statute to hold that the first and second sentences of the state statute, which mirrors the federal statute, serve different purposes. Although the scope of the second sentence is narrower than that of the first sentence, both serve the same goal—to ensure that employees who are pregnant are not discriminated against on the basis of pregnancy. To hold otherwise would be to require that employers treat pregnant employees more favorably than other employees. The statutes do not support such a result. See, e.g., *California Fed. S. & L. Assn. v. Guerra*, 479 U.S. at 287, 107 S.Ct. 683, 93 L.Ed.2d 613 ("Congress * * * extensively discussed * * * its intent not to require preferential treatment") and *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1317 ("Statements in the legislative history make it clear that the [Pregnancy Discrimination Act] does not require employers to extend any benefit to pregnant women that they do not already provide to other disabled employees").

*B. Properly construed, Ohio Adm.Code 4112-5-05 does not prohibit uniformly applied minimum-length-of-service requirements.*

{¶ 21} Ohio Adm.Code 4112-5-05(G)(2), the administrative regulation at issue, provides: "Where termination of employment of an employee who is temporarily disabled due to pregnancy or a related medical condition is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination."

{¶ 22} The court of appeals held that this provision requires, without qualification, that an employer provide maternity leave, and because Pataskala Oaks did not provide McFee a reasonable period of maternity leave, the leave policy was direct evidence of sex discrimination. We disagree.

{¶ 23} Appellant and its amici argue that if Ohio Adm.Code 4112-5-05(G)(2) does mandate that employers provide maternity leave to employees regardless of whether the employees qualify for leave under the employer's

uniform minimum-length-of-service leave policy, then the rule is unconstitutional, because the General Assembly has the constitutional authority to require employers to provide maternity leave, but the Civil Rights Commission does not.

{¶ 24} If an administrative rule exceeds the statutory authority established by the General Assembly, the agency has usurped the legislative function, thereby violating the separation of powers established in the Ohio Constitution. *Burger Brewing Co. v. Thomas* (1975), 42 Ohio St.2d 377, 384-385, 71 O.O.2d 366, 329 N.E.2d 693 (the General Assembly may not delegate lawmaking power). Rules that exceed the authority of the agency will be held unconstitutional. Id. at 384.

{¶ 25} The General Assembly sets public policy, and administrative agencies, when granted rulemaking power, "develop and administer" those policies. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 41. An agency exceeds its grant of authority when it creates rules that reflect a public policy not expressed in the governing statute. Id. Consistent with that principle, R.C. 4112.04(A)(4) provides that the Civil Rights Commission shall "[a]dopt, promulgate, amend, and rescind rules to effectuate the provisions of this chapter and the policies and practice of the commission in connection with this chapter."

{¶ 26} Because R.C. 4112.02 and 4112.01 establish that employers must treat employees affected by pregnancy the same as employees who are not pregnant but who are similar in their ability or inability to work, the Civil Rights Commission would unconstitutionally expand the public policy set by the legislature if Ohio Adm.Code 4112-5-05 required preferential treatment for employees affected by pregnancy as compared to the treatment of employees who are not pregnant but who are similar in their ability or inability to work.

{¶ 27} Under the rules of statutory construction, if an ambiguous statute is susceptible of two interpretations and one of the interpretations comports with the Constitution, then that reading of the statute will prevail and the court will avoid

striking the statute. *E. Cleveland v. Evatt* (1945), 145 Ohio St. 493, 496, 31 O.O. 167, 62 N.E.2d 325. We apply the rules of statutory construction to administrative rules as well. See, e.g., *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.* (1979), 57 Ohio St.2d 51, 54, 11 O.O.3d 214, 386 N.E.2d 1107 (the "ordinary meaning rule" of statutory construction applies equally to administrative rules).

{¶ 28} Thus, a construction of an administrative rule that is consistent with the public policy choices of the General Assembly preserves the rulemaking role of the agency and avoids constitutional conflicts.

{¶ 29} As explained above, the General Assembly intended to ensure equal treatment for employees affected by pregnancy, but not to impart greater rights or preferential treatment to employees affected by pregnancy. The rules promulgated by the Civil Rights Commission must be read, if possible, in a manner that effectuates the purpose of the General Assembly in enacting the statutes.

{¶ 30} Ohio Adm.Code 4112-5-05(G)(2) plainly prohibits termination of an employee under a policy that provides insufficient leave for temporary disability due to pregnancy or a related medical condition. Ohio Adm.Code 4112-5-05(G)(5)[1] instructs that women shall not be penalized in the conditions of their employment when they take time off for childbearing, *if they are eligible to do so*. Additionally, (G)(5) provides that when an employee is entitled to childbearing leave, that leave must be reasonable in duration.

---

1. {¶ a} Ohio Adm.Code 4112-5-05(G)(5) provides:

{¶ b} "Women shall not be penalized in their conditions of employment because they require time away from work on account of childbearing. When, under the employer's leave policy the female employee would qualify for leave, then childbearing must be considered by the employer to be a justification for leave of absence for female employees for a reasonable period of time. For example, if the female meets the equally applied minimum length of service requirements for leave time, she must be granted a reasonable leave on account of childbearing. Conditions applicable to her leave (other than its length) and to her return to employment shall be in accordance with the employer's leave policy."

**{¶ 31}** The tension between subsections (G)(2) and (G)(5) is apparent; (G)(2) appears to indicate that a policy providing no leave is discriminatory, while (G)(5) clearly contemplates that a uniform minimum-length-of-service requirement for leave eligibility is permissible. If possible, we must resolve this ambiguity in a manner that gives effect to both provisions. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19.

**{¶ 32}** Reading these rules in light of the statutory purpose, Ohio Adm.Code 4112-5-05(G)(2) must mean that when *an employee is otherwise eligible for leave*, the employer cannot lawfully terminate that employee for violating a policy that provides no leave or insufficient leave for temporary disability due to pregnancy or a related condition. Construed in this manner, (G)(2) effectuates the intent of the General Assembly to prohibit discrimination based upon pregnancy and to ensure equal treatment of employees affected by pregnancy. *California Fed. S. & L. Assn. v. Guerra*, 479 U.S. at 287, 107 S.Ct. 683, 93 L.Ed.2d 613; *Reeves v. Swift Trans. Co., Inc.*, 446 F.3d at 643.

**{¶ 33}** This interpretation of the rule harmonizes (G)(2) with (G)(5), which specifies that *when a woman qualifies for leave*, the leave provided for childbearing must be reasonable. Conversely, a holding that interpreted Ohio Adm.Code 4112-5-05(G)(2) to require maternity leave regardless of whether the pregnant employee satisfied the employer's minimum-length-of-service requirements would render meaningless the phrase in Ohio Adm.Code 4112-5-05(G)(5) that "if the female meets the equally applied minimum length of service requirements for leave time, she must be granted a reasonable leave on account of childbearing."

*C. The burden-shifting framework of McDonnell Douglas applies in this case.*

**{¶ 34}** The court of appeals held that Pataskala Oaks' leave policy was direct evidence of sex discrimination. "Direct evidence of discrimination is

evidence that proves that discrimination has occurred without requiring further inferences." *Reeves v. Swift Transp. Co., Inc*., 446 F.3d at 640.

{¶ 35} As discussed above, an employer may maintain a uniform minimum-length-of-service leave policy consistent with Ohio law. Pataskala Oaks' policy is "pregnancy-blind" in that it does not treat employees affected by pregnancy differently from employees "not so affected but similar in their ability or inability to work." *Reeves v. Swift Transp. Co., Inc*., 446 F.3d at 640-641. An employment policy that imposes a uniform minimum-length-of-service requirement for leave eligibility with no exception for maternity leave is not direct evidence of sex discrimination under R.C. Chapter 4112. Thus, the *McDonnell Douglas* analysis should be applied in cases involving such a policy. Id.

{¶ 36} The parties agree that McFee was terminated because she took leave from work even though she was not eligible for leave under Pataskala Oaks' policy. McFee has not alleged any other basis for a finding of discrimination, nor has she produced independent evidence that the proffered basis for the termination was a pretext for discrimination. Accordingly, McFee has failed to make a prima facie case of sex discrimination. The trial court properly dismissed the case.

## IV

{¶ 37} The judgment of the court of appeals is reversed.

Judgment reversed
and cause dismissed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

BROWN, C.J., not participating.

_____

**PFEIFER, J., dissenting.**

{¶ 38} The facts of this case are such that an ordinary citizen would think, "There ought to be a law against that." Until today, there was.

{¶ 39} R.C. 4112.02(A) makes it unlawful for any employer "to discharge without just cause" an employee because of his or her sex. R.C. 4112.01(B) makes clear that the prohibition in R.C. 4112.02(A) includes discrimination and discharge on the basis of pregnancy and pregnancy-related illness:

{¶ 40} "[T]he terms 'because of sex' and 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."

{¶ 41} McFee provided a doctor's note to Pataskala Oaks indicating that she had a pregnancy-related illness, pregnancy-related swelling, that rendered her unable to continue her job duties until six weeks after she gave birth. Pataskala Oaks says that it did not fire McFee because she was ill, but because she missed work because she was ill. What did the General Assembly mean when it protected women from discharge based upon pregnancy-related illness? Did it intend women not to treat their illness, but instead to go to work ill? That they should follow their doctor's advice for bed rest by bringing their beds to their place of employment? Does not the word "illness" connote missed work time?

{¶ 42} The Civil Rights Commission was perfectly in line with R.C. 4112.01(B) when it promulgated Ohio Adm.Code 4112-5-05(G), establishing what constitutes pregnancy discrimination and including in that definition protections for women whose employers had no maternity leave available. McFee is protected under Ohio Adm.Code 4112-5-05(G)(2):

**{¶ 43}** "Where termination of employment of an employee who is temporarily disabled due to pregnancy or a related medical condition is caused by an employment policy under which insufficient or no maternity leave is available, such termination shall constitute unlawful sex discrimination."

**{¶ 44}** Pursuant to the Pataskala Oaks employment policy, there was no maternity leave available to McFee. Therefore, her termination constituted direct evidence of unlawful sex discrimination.

**{¶ 45}** It should be noted that McFee was not asking to be paid for her time off, and the law does not require her to be paid. The ironic postscript to this whole matter is that Pataskala Oaks called McFee three weeks after firing her and offered her a job. The burden of allowing McFee unpaid leave to deal with the medical effects of her pregnancy had turned out to be not such a burden. Now, as McFee's child likely is graduating from kindergarten, Pataskala Oaks is finally emerging from litigation. It fought the statutorily mandated decency contained in R.C. 4112.01(B) and 4112.02(A) and won. Who is better for it?

—————————————

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Alexandra T. Schimmer, Chief Deputy Solicitor General, Stephen P. Carney and Emily S. Schlesinger, Deputy Solicitors, and Patrick M. Dull, Assistant Attorney General, for appellee.

Dinsmore & Shohl, L.L.P., Jan E. Hensel, and Patricia Gavigan, for appellant.

Gordillo & Gordillo, L.L.C., and Gregory A. Gordillo, urging affirmance for amici curiae Ohio Employment Lawyers Association, Ohio Poverty Law Center, and Ohio NOW Legal Defense and Education Fund.

Porter, Wright, Morris & Arthur, L.L.P., and Jeffrey J. Weber, urging reversal for amicus curiae National Federation of Independent Business Small Business Legal Center.

Rolf & Goffman Co., L.P.A., Carol Rolf, and Robert C. Pivonka, urging reversal for amicus curiae Ohio Health Care Association.

Vorys, Sater, Seymour & Pease, L.L.P., Thomas M. Tarpy, and Michael C. Griffaton, urging reversal for amicus curiae Ohio Management Lawyers Association.

_____