NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0184n.06

No. 14-3619

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>THEODORE J. SLOBAN,</td><td>)</td><td rowspan="12"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MAHONING YOUNGSTOWN COMMUNITY</td><td>)</td></tr>
<tr><td>ACTION PARTNERSHIP,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellee.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Mar 09, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**BEFORE: BATCHELDER and WHITE, Circuit Judges; and COX, District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.** Theodore J. Sloban appeals the district court's grant of summary judgment to his former employer, Mahoning Youngstown Community Action Partnership (MYCAP), on his Age Discrimination in Employment Act (ADEA) and analogous state-law claims. We **AFFIRM**.

**I.**

MYCAP is a nonprofit community agency that provides a variety of services to low-income families in the Mahoning and Youngstown County, Ohio, area. Its Home Energy Services (HES) program provides home weatherization and utility-payment assistance to low-income homeowners. MYCAP hired Sloban in 1980 as a field supervisor in the HES program, and in 1996, Sloban became the program's director. During his tenure as director, MYCAP documented several instances in which it believed Sloban behaved inappropriately as a

---

[*] The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

supervisor or mismanaged the program. MYCAP considered HES to be in a "crisis state" in mid-2001 due in part to Sloban's management of the program. In August 2002, MYCAP reassigned HES's compliance obligations to Vesna Vukasinovich after Sloban failed to respond to an Ohio Department of Development request within the required time period. The next year, Vukasinovich was named interim director of HES and Sloban was demoted to interim assistant director due to "[l]ack of effective management in the program." In 2003, Sloban was relieved of all management responsibilities; he returned to the position of field supervisor the following year. Even in that capacity, Sloban was warned that his "inability to follow specific instructions in [his] job duties [was] completely unsatisfactory." Sloban was demoted further to furnace technician in 2005.

MYCAP came under increased scrutiny in 2009 by the State of Ohio to ensure proper use of public money it received from the American Recovery and Reinvestment Act. Consequently, all technical staff—including Sloban—were placed on a performance improvement plan. Around the same time, MYCAP replaced its executive director with John Wilson, and transferred Sloban to an assessor position. In that role, Sloban performed furnace inspections and overall home assessments.

In September 2010, HES Director Vukasinovich and Assistant HES Director Jamira Ellis sent Sloban a written memorandum advising him that the "majority of your assessments require corrections and many are given back to you [multiple] times to be corrected and are not completed and returned in a timely manner," and warning that if they did not "see improvement in your assessments, disciplinary action will be taken." A few months later, Sloban's direct supervisor, William Rowbotham, issued Sloban an employee warning notice for attendance issues, inappropriate behavior, unsatisfactory performance, and insubordination, asserting that

Sloban had failed to timely complete required paperwork, used his personal computer to process homeowners' information in violation of MYCAP policy, arrived at work late, left work early, and logged more absences than MYCAP's policy authorized. Rowbotham placed Sloban on probation and warned him that he would be suspended if the violations occurred again. Rowbotham suspended Sloban the following month, after Sloban's company-owned vehicle was seen parked in front of a bar, which was located outside of Sloban's authorized lunch area and the designated lunch period.

MYCAP executive director Wilson met with Sloban, Rowbotham, and Vukasinovich in January 2011 to discuss management's expectations of Sloban. Following the meeting, Sloban's behavior and productivity did not improve to management's satisfaction. Wilson suspended Sloban for five days without pay because of insubordination and gross negligence, failure to cooperate with coworkers, and misconduct related to work hours. The suspension letter informed Sloban that a failure to improve could lead to additional suspension or termination. In April, Sloban was demoted to crew person, the lowest position in HES. Approximately one week later, Wilson discharged Sloban. Wilson stated in a discharge letter that a "review of your personnel records over the past 6 months, documents that your performance, attitude and production output has [sic] not been consistent with meeting" increased production and quality goals due to greater government scrutiny. Sloban was fifty-eight years old.

Sloban filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). After investigation, the EEOC dismissed the charge based on its determination that it was "unable to conclude that the information obtained establishes violations of the statutes." Sloban then brought an action in the district court. On MYCAP's motion for summary judgment, the district court concluded that Sloban did not present direct evidence of

discrimination, failed to establish a prima facie circumstantial case of discrimination because he could not identify similarly situated nonprotected employees who MYCAP treated more favorably, and also failed to show pretext. The court entered summary judgment for MYCAP on all claims. Sloban now appeals.

## II.

Sloban raises two issues on appeal: (1) that certain age-related remarks constitute direct evidence of age discrimination; and (2) that the court erred in its circumstantial-evidence analysis because it weighed conflicting evidence in MYCAP's favor.

## A.

We review de novo a district court's order granting summary judgment. *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 600 (6th Cir. 2013). An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Mitchell v. Fankhauser*, 375 F.3d 477, 479 (6th Cir. 2004). In determining whether the district court's grant of summary judgment was proper, "we must view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence to support the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Under the ADEA, it is unlawful for an employer to discharge an employee who is at least 40 years old because of the employee's age. 29 U.S.C. §§ 623(a)(1), 631; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). Similarly, it is an unlawful discriminatory

practice in Ohio for an employer to discharge an employee because of the person's age. Ohio Rev. Code § 4112.02(A). Age-discrimination claims brought under Ohio law are analyzed under the same standards as claims brought under the ADEA. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005). A plaintiff can prove unlawful age discrimination under the ADEA with either direct or circumstantial evidence. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Direct evidence of discrimination is evidence that, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision," *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 530 (6th Cir. 2014), and does not require the factfinder to draw any inferences to reach that conclusion, *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013). Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

**B.**

Sloban testified that approximately one year before he was discharged, he overheard a conversation between Vukasinovich, Jeff Patterson, and Jamira Ellis, during which someone said: "When they get old, they should get out of here. I don't know why they would stay. I don't know why they won't retire and just go. I don't know why they would want to stay." He contends this conversation occurred at least three times. These statements, he claims, are direct evidence of age discrimination. We evaluate statements allegedly showing an employer's age bias under the following four factors, taking all of the circumstances into account: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and

(4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

The district court considered these factors and concluded that Vukasinovich, Patterson, and Ellis were neither decision makers (because Wilson had the sole authority to discharge Sloban) nor Wilson's agents; no evidence connected the year-old remarks to Sloban's discharge; and the comments were ambiguous and vague because Sloban could not place the conversation in context since he was not a participant. In addition, the court noted that the conversation participants were members of the ADEA protected class at the time of the conversations— Vukasinovich was 60, Patterson was 54, and Ellis was 49 years old—and thus their ages "seriously undermine[d]" Sloban's direct evidence claim. Sloban was 58.

On appeal, Sloban contends the comments were related to Wilson's decision to discharge him because Wilson acted on Vukasinovich's discharge recommendation. Sloban also asserts that the remarks were "painfully blunt" and that the passage of one year between the conversation and Sloban's discharge is "ill-described as either 'proximate' or 'remote.'"

A plaintiff can establish liability under a "cat's paw" theory where "'a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and . . . that act is a proximate cause of the ultimate employment action.'" *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012) (alteration in original) (quoting *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011)). The district court correctly concluded that the comments were not direct evidence of discrimination attributable to Wilson and that there was no evidence that Vukasinovich's comments caused or were related to Sloban's discharge. That Vukasinovich (who was two years older than Sloban) reported to Wilson does not demonstrate that her conversations were related to Wilson's decision-making

process or his decision to discharge Sloban one year later. Wilson had himself been involved in Sloban's previous discipline and conducted his own review of Sloban's employment history and performance before deciding to discharge him.

**C.**

A plaintiff without direct evidence of discrimination can establish a prima facie case of age discrimination by showing: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker, or there are other circumstances that support an inference of discrimination, e.g., that similarly situated employees outside of the protected class were treated more favorably. *Mickey*, 516 F.3d at 521; *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012); *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004). Once the plaintiff has satisfied his initial burden, the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse decision. *Mickey*, 516 F.3d at 521. If the defendant articulates such a reason, the plaintiff must show that the reason given is pretext for discrimination. *Id.*

The fourth prong is at issue here. Because MYCAP did not replace Sloban with someone younger, Sloban was required to show that MYCAP treated similarly situated younger employees more favorably than him. Sloban argues that MYCAP favored substantially younger assessors by assigning them, but not him, to "easier jobs," permitting them to attend conferences, allowing them to report their hours in writing rather than having to clock in, and giving them

newer equipment.[1]  The district court concluded that Sloban's own testimony refuted these assertions.

On appeal, Sloban argues the district court impermissibly weighed conflicting evidence and resolved disputed facts in MYCAP's favor.  A district court may not weigh evidence at summary judgment; rather, the court must determine whether there is a genuine issue of fact for trial.  *Anderson*, 477 U.S. at 249.  Sloban proffers the following three examples of the district court allegedly weighing evidence:

1. He conceded that the more difficult jobs ultimately given to him were more suitable for a worker with more training and experience.  Few workers had more training and experience than Plaintiff, who was hired in 1980 and at one time was the head of HES.  The arrangement was sensible management.

2. Second, Plaintiff confessed that he regularly attended the same conferences as the younger employees and MYCAP never denied him the opportunity to attend a conference when he asked to go.

3. In fact, Plaintiff "got a lot of [his] equipment upgraded" when he complained to MYCAP about his equipment.

Sloban Br. 15 (quoting Memorandum of Opinion & Order, R. 23 (alteration in original)).  Sloban does not, however, explain how each of these observations by the district court is a result of the court weighing conflicting evidence.  The court based each statement solely on Sloban's testimony.  Sloban does not point us to conflicting evidence, contend the court misread his testimony, or suggest his testimony was not accurate.  Indeed, we come to the same conclusions.  Sloban claimed MYCAP assigned him more difficult jobs than younger employees, but admitted

---

[1] Sloban argued below MYCAP favored younger employees when it conducted a reduction in force in 2011 after it exhausted the stimulus funding.  The district court observed that Sloban was not similarly situated to the younger laid-off assessors since he was discharged and concluded that, in any event, Sloban's statistical evidence did not support an inference of discrimination because the sample size was too small for meaningful analysis.  Sloban does not challenge these conclusions on appeal.

that an employee with his training and experience could better handle more difficult jobs. He maintained that MYCAP denied him, but not younger workers, training and conference opportunities, but admitted that when he asked to go to events, MYCAP allowed him.[2] Similarly, Sloban alleged MYCAP allowed younger employees to write down their hours rather than clock in and out of work; however, Sloban admitted he too was permitted to report his hours in writing. Finally, Sloban contended younger workers received new vehicles and equipment; yet, in his deposition, he admitted he "got a lot of his equipment upgraded" after he complained.[3]

Sloban also challenges the district court's conclusion that he could not prove pretext. A plaintiff generally can show pretext by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the adverse employment decision, or (3) that they were insufficient to motivate discharge. *Blizzard*, 698 F.3d at 285. To carry his burden, Sloban must "rebut . . . [MYCAP's] proffered rationale[s]"; he need not disprove them. *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012). However, "[i]f an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012).

---

[2] Sloban testified that Vukasinovich allowed him to go to five conferences after 2003 or 2004 on vacation time. The district court noted that Sloban also testified that he did not know whether the other employees used vacation time to attend conferences. Sloban makes no issue of this.

[3] To the extent Sloban asks us to further review the court's decision for impermissible factfinding by referring to other unidentified instances of factfinding "littered throughout" the court's opinion, we decline to do so. *See United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)).

Sloban asserts his employment record confirms he was an excellent employee, and thus, Wilson's stated reasons for discharging him (i.e., insubordination, failure to cooperate, and misconduct) were pretext for age discrimination. In particular, he draws attention to his 2009 performance evaluation, which rated him "very good" in three categories, "good" in seventeen, and "needs improvement" in only one. The generally positive 2009 review does not create a factual dispute. Wilson discharged Sloban based on a performance review of Sloban's last six months. Sloban directs us to an "uncharacteristic dearth" of documentation between his January 2011 suspension and ultimate discharge in April and an allegedly missing 2010 review, as evidence of a factual dispute.

Sloban argues Wilson's stated reasons for discharging him had no basis in fact because there was no documented evidence of misconduct or poor performance in the months preceding his discharge. To the contrary, the record includes notes and testimony regarding a January 2011 meeting, in which management met with Sloban to discuss MYCAP's expectations of him, as well as Rowbotham's daily reports of Sloban's activities and an April 2011 email from Rowbotham to management documenting a mistake Sloban made that Rowbotham was required to correct.

Finally, Sloban argues that because MYCAP did not produce his 2010 performance evaluation, he is entitled to a presumption that the alleged 2010 report was favorable to him. In this circuit:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (alteration in original) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). Although we must construe all reasonable inferences in Sloban's favor, as the nonmovant, Sloban has failed to prove the existence of the report so as to create a factual dispute. MYCAP contends it did not evaluate Sloban in 2010 on the same form it used in 2009; rather, it provided him ongoing evaluations in the form of memoranda. Sloban, therefore, is not entitled to an adverse inference for evidence spoliation. We agree with the district court that Sloban failed to prove pretext, and therefore, do not address the court's determination that MYCAP was entitled to the honest-belief defense.

### III.

For these reasons, we **AFFIRM** the district court's judgment.