NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0627n.06

Case No. 16-3191

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 28, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOANNE PARTIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| WELTMAN WEINBERG & REIS CO. LPA, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Facing declining demand for its legal services, Weltman Weinberg & Reis ("WWR") began a multi-phase reduction in force ("RIF") in 2012. Over the next four years, WWR laid off approximately 33% of its staff. Appellant Joanne Partin was one of those employees. Partin then sued WWR, alleging that the firm targeted her for layoffs because she opted for leave under the Family Medical Leave Act (FMLA). A magistrate judge's review resulted in a recommendation to grant summary judgment to WWR on Partin's FMLA and disability discrimination claims. The district court adopted the magistrate's report in full, and Partin appealed. We AFFIRM.

I.

WWR is a law firm with offices in Ohio, Pennsylvania, Michigan, Illinois, and Florida. In 2003, Partin began working in WWR's Cincinnati, Ohio office as a clerk within its Legal Processing Department—the team responsible for preparing and filing court documents. Beginning in 2012, market conditions pressed WWR to prune its workforce. Among other areas, the firm trimmed the Legal Processing Department and planned to consolidate the Department's work into its Columbus, Ohio office, leaving only a skeleton-crew of clerks elsewhere. WWR settled on five criteria to decide whom to fire, listed in order of importance: 1) work, functionality, and the ability to absorb responsibilities; 2) overall work performance; 3) any history of disciplinary action; 4) ability to adapt to change and work on a team; and 5) seniority.

WWR began reducing its workforce in January 2013 and charged Juanita Stevens and Saundra Duncan with overseeing layoffs from the Legal Processing Department. Stevens and Duncan ranked the clerks using the employee-selection criteria and selected J. Renner—who had never taken FMLA leave—for elimination because she scored the lowest. At the time, WWR emphasized the importance of documenting the reasons for selecting Renner. To that end, Michele DeSalvo, WWR's "Employee Relations Specialist," detailed in writing how Renner's performance fared under the employee-selection criteria.

In March 2013, WWR carried out another round of layoffs, this time selecting B. Seiber—another non-FMLA user—from the Cincinnati office. Although WWR initially ranked Seiber ahead of another employee, Richard Holwadel, Holwadel's performance improved between January and March.

When the third reduction in force commenced in August, Stevens selected both Holwadel and Partin for termination from the Cincinnati office. Stevens justified her decision to include

Partin by describing her as "a 'C' player." Because several department members voluntarily quit, however, the firm postponed firing Holwadel and Partin.

WWR announced the next reduction in December, again identifying both Partin and Holwadel for layoffs. In an email to human resources, Stevens expressed her intent to "send you the write[-]up as to why [their] names were selected," but no such write-up appears in the record. Although WWR informed Holwadel and some 60 other employees firm-wide about the reduction in December, it postponed telling Partin because she was on authorized FMLA leave recovering from knee-replacement surgery, and her supervisors reasoned  that they might avoid letting her go if another clerk quit before she returned. She scheduled her return for January 6, 2014, when her FMLA-approved leave expired.

On the morning of January 7, however, Partin's physician faxed WWR a medical certification stating that Partin needed to extend her leave. DeSalvo mailed Partin a response approving an extension. But DeSalvo also explained that because Partin had used all her FMLA leave, "the Firm may not be able to hold [her] position open for [her] during this time." Alarmed, Partin called DeSalvo and asked if she would have a job if she returned by January 13. According to Partin, DeSalvo said she would. Partin then notified her doctor, who faxed WWR a return-to-work slip explaining that she would require the use of a walking-aid at work. On January 9, DeSalvo determined that WWR's "conditions had not changed, no other employees had left the department, and Ms. Partin's position was still being eliminated [as] part of the reduction that impacted other employees." DeSalvo called her the next day and told her that her position had "been eliminated and that her employment was being terminated."

Two months later, Partin sued WWR, alleging that her former employer retaliated against her for using FMLA-protected leave and discriminated against her on the basis of disability in

violation of Ohio law. The district court assigned the case to a magistrate. Following discovery, WWR moved for summary judgment. The magistrate recommended the motion be granted in full, concluding that Partin failed to show that WWR's selection of her position for elimination was pretext for unlawful discrimination. The district court adopted the magistrate's recommendation over Partin's objections. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 575 (6th Cir. 2007). "Summary judgment is appropriate if, after examining the record and drawing all inferences in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004)).

## III.

On appeal, Partin argues that the district court erred by: (1) giving short shrift to her evidence of pretext for her FMLA-retaliation claim; and (2) applying the wrong legal framework to her disability-discrimination claim. We address each contention in turn.

**A) FMLA Legal Framework**

The FMLA allows employees "a total of 12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This circuit recognizes two distinct theories of recovery under the FMLA: (1) an "interference" theory; and (2) a "retaliation" theory. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). A claim of retaliatory discharge is cognizable under either theory, but "the requisite proofs differ."

*Id.* The "interference" theory does not require proof of discriminatory intent; "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). The "retaliation" theory, on the other hand, demands proof that "the employer took the adverse action *because of* a prohibited reason." *Seeger*, 443 F.3d at 508 (emphasis added) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). Partin advanced both interference and retaliation theories below, but she does not appeal the district court's rejection of her interference claim.

**B) Partin's Retaliation Claim**

Because Partin relies on indirect evidence to show retaliation, we review her claim under *McDonnell Douglas*'s burden-shifting framework. *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Partin must first make out a prima facie case "by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)). If she does, the burden then shifts to WWR to offer a legitimate, nondiscriminatory basis for the adverse employment action. *Id.* If WWR succeeds, the burden shifts back to Partin to undermine that basis as pretextual. *Id.*

"Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). At the summary judgment stage, Partin bears the burden to produce "sufficient evidence from which a jury could reasonably reject [WWR's] explanation for why it fired her." *Id.* at 400 (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008)). WWR is entitled to

judgment as a matter of law if Partin creates "only a weak issue of fact as to whether [WWR]'s reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000).

The district court held that Partin established a prima facie case of retaliation but that WWR's firm-wide reduction in force was a legitimate, non-discriminatory reason for eliminating her position. Neither party contests these holdings on appeal. Instead, Partin focuses on evidence she claims shows pretext. We agree with the magistrate judge and district court that Partin's evidence would not permit a reasonable jury to reject WWR's non-discriminatory reason for her termination.

## C) Partin's Evidence of Pretext

*First*, Partin points out that Stevens selected two FMLA users—Holwadel and her—for layoffs from the Cincinnati office's Legal Processing Department in December 2013. By contrast, the three Cincinnati processing clerks that WWR retained had not used FMLA leave. Adding WWR's Columbus and Brooklyn Heights, Ohio offices to the mix, she explains that three of the five legal processing clerks that Stevens selected for December layoffs were either on FMLA leave or about to use it. But as the magistrate aptly noted, "[WWR]'s RIF was not limited to Cincinnati or Ohio, but was firm-wide over five states and included reductions in the legal processing department in three different offices in Ohio." Nor was it confined to December 2013, but also included reductions in January, March, and August 2013. We agree with the magistrate that when reviewed in context, Partin's evidence "fails to cast doubt on [WWR]'s stated reason for her termination." Moreover, even if we indulged Partin and narrowed our focus to the Ohio layoffs in December 2013, a five-employee sample "provide[s] little or no probative

force to show discrimination." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943 n.7 (6th Cir. 1987) (finding a seventeen-person sample insufficient to draw a discriminatory inference); *Black v. City of Akron*, 831 F.2d 131, 134 (6th Cir. 1987) (explaining that with a five-employee sample, "it is much more likely that mere chance is the controlling factor" creating a statistical disparity).

*Second*, Partin asserts that WWR retained less experienced and lower-performing clerks who had never taken FMLA leave at her and Holwadel's expense. But in weighing the five employee-selection criteria, WWR cared least about experience. And although Partin may wish the law were otherwise, an employer need not give any special weight to seniority in making employment decisions. *See Woods v. FacilitySource, LLC*, 640 F. App'x 478, 484 (6th Cir. 2016). Likewise, Partin's claim that we can infer pretext from WWR's retention of a "lower-rated performer" who had not taken FMLA leave misses the target. Performance was only one of five criteria used to rank employees. Duncan testified that WWR selected Partin and Holwadel for inclusion in the December 2013 RIF because "[t]hey met the majority of the five [criteria]," and Partin points to nothing in the record that casts doubt on this explanation.

*Third*, Partin relies heavily on WWR's failure to produce Juanita Stevens's statement of reasons for Partin's selection. Although WWR disputes that Stevens followed through with her intent to prepare such a document, Partin argues that a reasonable jury could find otherwise from the following facts: (1) WWR encouraged supervisors to document the reasons for including employees in the RIF so that it could "defend its decisions;" (2) Stevens prepared write-ups for why she slated positions for termination during a prior phase of the RIF; and (3) when Stevens chose Partin and other employees for reduction in December, she emailed her supervisor explaining that she would "send . . . the write up as to why the names were selected." Because WWR never produced this supposed write-up, Partin asserts that a jury could infer that it

contained evidence adverse to WWR. All this, she argues, creates a jury question on WWR's basis for firing her. (*Id.*)

We disagree. For Partin to be entitled to have a jury draw an adverse inference, she must, at a minimum, establish that a reasonable jury could find that Stevens in fact prepared the purported write-up. *See Sloban v. Mahoning Youngstown Cmty. Action P'Ship*, 604 F. App'x 407, 413 (6th Cir. 2015); *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). She fails to do so.

Viewed in the light most favorable to Partin, the evidence shows that WWR encouraged managers to document the reasons for making termination decisions, that Stevens did so at least some of the time, and that she intended to memorialize her reasons for selecting Partin. But none of those facts establishes that Stevens followed through on this particular occasion. And although Partin portrays WWR's preference for written documentation as an "explicit HR policy" that was invariably followed, her characterization stretches the record. DeSalvo testified that WWR would "ideally" like to memorialize layoff decisions and "consider[ed] it important." Although Partin points to an email from Stevens explaining her reasons for selecting clerks in the August round of layoffs, the record does not include examples of written documentation during the March round. Nor does it show that other supervisors consistently followed WWR's "policy." In fact, besides Stevens's August email, the only evidence that other supervisors complied with this "policy" is a single email from DeSalvo explaining WWR's reasons for firing Renner in January, and it appears that DeSalvo had to follow up with Renner's direct supervisor to obtain the necessary information. Taken together, this evidence would not permit a rational trier of fact to conclude that Stevens documented her reasons for firing Partin. *See Sloban*, 604 F. App'x at 413 (refusing to apply adverse inference from defendant's failure to produce a

performance evaluation because appellant "failed to prove the existence of the report so as to create a factual dispute").

Partin thus fails to demonstrate that WWR's justification for firing her was pretext for unlawful discrimination.

IV.

Next, Partin argues that the district court erred in granting WWR summary judgment on her disability discrimination claim. Under both Ohio and federal law, courts apply the *McDonnell-Douglas* framework to disability-discrimination claims that rely on indirect evidence. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998); *McFee v. Nursing Care Mgt. of Am., Inc.*, 931 N.W. 2d 1069, 1076–77 (Ohio 2010). The district court construed Partin's claim as relying on indirect evidence, and it held that Partin could not establish a prima facie case because WWR did not try to fill her position. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016); *Byrnes v. LCI Comm'n Holdings Co.*, 672 N.E.2d 145, 148 (Ohio 1996). On appeal, Partin argues that the district court erred by applying the *McDonnell-Douglas* framework because her claim relies on direct evidence of discrimination. As direct evidence, she points out that WWR told her it was eliminating her position soon after learning that she would require a walking-aid at work. (*Id.*)

Direct evidence is the proverbial "smoking gun." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016). It "does not require the fact finder to draw any inferences" to conclude that unlawful discrimination motived an employer's actions. *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). The short time between WWR learning of Partin's walking restriction and its decision to eliminate her position is not direct evidence of discrimination. The factfinder must

still infer that Partin's need for a walking-aid, not WWR's desire to cut costs, motivated its decision to fire her. Accordingly, Partin's discrimination claim relies on indirect evidence, and the district court correctly applied the *McDonnell-Douglas* framework. And because Partin cannot show that WWR sought to replace her, she is missing a necessary ingredient of a prima facie case. *See Ferrari*, 826 F.3d at 894.

For these reasons, we AFFIRM the district court's judgment.