**SIMPSON et al., Appellants,**

**v.**

**OHIO DIVISION OF MINES AND RECLAMATION, Appellee;**
**Ohio Valley Coal Company, Intervenor.**

[Cite as *Simpson v. Ohio Div. of Mines* (2001), 145 Ohio App.3d 817.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 99 BA 16.

Decided Sept. 10, 2001.

*Steven J. Edwards; Fisher, Douglas & Schwartz* and *David W. Douglas,* for appellants Floyd Simpson, Country Mile Farm, and F. & S. Simpson.

*Betty D. Montgomery,* Attorney General, *Brett A. Kravitz* and *Kristen Bennett,* Assistant Attorneys General, Environmental Enforcement Section, for appellee Division of Mines and Reclamation.

*Porter, Wright, Morris & Arthur, Mark S. Stemm* and *Douglas L. Anderson,* for intervenor Ohio Valley Coal Company.

DeGenaro, Judge.

This timely appeal comes for consideration upon the record before the Reclamation Commission, the parties' briefs, and their arguments to this court. Appellant Floyd Simpson ("Simpson") appeals the decision of the Reclamation Commission dismissing Simpson's appeal and upholding the ruling of the Chief of the Ohio Department of Natural Resources, Division of Mines and Reclamation,

issuing an Adjacent Area Coal Mining Permit to appellee, the Ohio Valley Coal Company ("TOVCC"). The issues before us are (1) whether the commission erred in upholding the chief's ruling that R.C. 1513.16(A)(2) prevented the chief and/or the commission from settling a property rights dispute between TOVCC and Simpson and (2) whether the commission erred in upholding the chief's finding that there were no listings as historic places for any property located under the affected area pursuant to R.C. 1513.073(D)(3). For the following reasons we affirm the decision of the commission.

The relevant facts are not in dispute. On May 2, 1997, TOVCC submitted to the chief an application seeking approval for longwall mining a portion of the No. 8 Pittsburgh Coal Seam in Belmont County, Ohio. TOVCC had prior authority to mine this particular coal seam by virtue of three deeds through which Simpson's predecessors in interest conveyed to TOVCC the right to mine the No. 8 Pittsburgh Coal seam underlying Simpson's property. More than a year after the application was submitted, on June 19, 1998, the chief issued a decision granting the permit. Simpson appealed the chief's decision to the Reclamation Commission on July 20, 1998. On January 21, 1999, a hearing was held before the commission on motions filed by the division and TOVCC seeking dismissal of Simpson's appeal for lack of subject matter jurisdiction. The motions were granted February 4, 1999. On March 1, 1999, Simpson filed a notice of appeal to this court.

Because Simpson's appeal arises from a decision of the Reclamation Commission, the standard of review applicable to decisions from that body is set forth in R.C. 1513.14(A). That section recites:

"(A) Any party aggrieved or adversely affected by a decision of the reclamation commission may appeal to the court of appeals for the county in which the activity addressed by the decision of the commission occurred, is occurring, or will occur, which court has exclusive jurisdiction over the appeal. The appeal shall be filed within thirty days of issuance of the decision of the commission. The court shall confine its review to the record certified by the commission. * * *

"* * *

"The court shall affirm the decision of the commission unless the court determines that it is arbitrary, capricious, or otherwise inconsistent with law, in which case the court shall vacate the decision and remand to the commission for such further proceedings as it may direct."

This is an abuse-of-discretion standard, which connotes more than an error of judgment, rather than the decision is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19

OBR 123, 482 N.E.2d 1248. Thus, Simpson will prevail only if the commission's decision is an abuse of discretion.

Simpson's first assignment of error alleges:

"The Reclamation Commission must consider coal mining, natural gas production and oil production as uses under O.R.C. 1513.16(A)(2) and make a determination, prior to issuing a permit as to whether the proposed mining will allow the affected land to be restored to a condition that will support other coal mining, natural gas production and oil production."

■ The issue as framed by Simpson before the commission was whether the chief acted arbitrarily in failing to consider the impact the proposed mining would have on the remaining minerals and mineral rights not owned by the applicant, TOVCC. Simpson argued to the commission that the chief must inquire into the impact on remaining coal seams and potential oil and natural gas recovery before issuing a permit.

Concluding that this issue was a dispute over competing mineral estates, the commission held:

"The question of whether [T]OVCC's mining will impact or destroy other minerals not owned by [T]OVCC, is not a question of permitting, but rather is a question of property rights. The law unequivocally forbids the Division Chief from adjudicating property rights disputes. As the Commission's jurisdiction is defined and limited by the jurisdiction of the Division Chief, the Commission likewise can not explore the property rights question raised by the Appellants. *Citizens Organized Against Longwalling v. DOR, et al.* (1987), 41 Ohio App.3d 290, 535 N.E.2d 687; *Jeanne Delong Ross v. DOR & Chesterhill Stone Co.* (1991), RBR–10–91–948. Thus, the Commission *FINDS* that it lacks subject matter jurisdiction over the issue raised in these appeals."

Simpson's argument on the issue to this court is premised on his interpretation of R.C. 1513.16, which addresses performance standards and states:

"A. * * * General performance standards shall apply to all coal mining and reclamation operations and shall require the operator at a minimum to do all of the following:

"(1) Conduct coal mining operations so as to maximize the utilization and conservation of the solid fuel resource being recovered so that reaffecting the land in the future through coal mining can be minimized;

"(2) Restore the land affected to a condition capable of supporting the uses that it was capable of supporting prior to any mining, or higher or better uses of which there is reasonable likelihood, so long as the uses do not present any actual or probable hazard to public health or safety. * * * "

Simpson speculates here as to loss of value of other coal mining opportunity in higher seams and other mineral extraction. The chief addressed the concern in paragraph 19 to the written Findings—Informal Conference—August 4, 1997 (Permit # D–0360–7):

"**RESPONSE:** ORC Chapter 1513 regulates surface impacts incident to underground coal mining and reclamation operations. Such surface impacts do not generally include alleged impacts on other coal seams. The Division is aware that damage may occur to overlying coal seams, but believes that surface mining of these seams may still be possible depending upon a variety of stratigraphic factors. However, the extent of potential damage is a moot issue as the Ohio law does not contemplate this issue. Anyone who believes their mineral rights have been damaged as a result of some activity such as longwall mining can pursue this issue as a civil matter in the courts. Chapter 1513 is very specific in its prohibition of the Chief from adjudicating property right issues."

Regarding Simpson's allegation of material damage to surface land, the chief responded at paragraph 16:

"**RESPONSE:** Ohio Administrative Code (OAC) Section 1501:13–12–03 provides, in part, that the underground mine operator shall correct any material damage caused to surface lands, to the extent technologically and economically feasible, *by restoring the land surface to a condition capable of maintaining the value and reasonably foreseeable use(s) which it was capable of supporting before subsidence.* The operator is required to repair material damage to surface lands.

"The Division interprets the law to state that underground mine operators shall be responsible for all subsidence damage. OAC Section 1501:13–12–03 requires repair or compensation for damage to structures caused by an underground mine operation. Division policy further states 'that all water supplies will be replaced, all structures repaired or compensated for, and all damages to the surface land repaired ...' A fence is a structure and must be repaired in accordance with the provisions of OAC Section 1501:13–12–03."

Simpson would have this court believe the chief is impressed with the statutory obligation to balance *any other potential* land use against the mining request before granting a permit. There is no established Ohio case law that imposes such a burden upon the chief. Moreover, this argument defies logic. As noted in the chief's decision, the Ohio Administrative Code requires restoration to the surface, not the subsurface. To hold otherwise would require restoration of underlying coal seams that may have been affected, which is an untenable result.

Simpson argues that the commission erred by concluding that the damage to other mineral estates is a question of property rights and not a matter for consideration in the permit process. R.C. 1513.07 sets forth the permit process and attendant application requirements, and clearly refutes Simpson's contention:

"This chapter does not authorize the chief to adjudicate property rights disputes." R.C. 1513.07(E)(2)(e)(iii).

In its order of February 4, 1999, the commission stated:

"The issue raised by the Simpsons addresses a dispute regarding competing mineral estates. Evaluation of the relative value of the recovery of one mineral over another mineral is not a comparison which the law requires the Division Chief to make."

The commission correctly concluded, as did the chief, that both are barred by statute from resolving or considering competing mineral property rights in the application process. Jurisdiction to resolve that issue lies with the court of common pleas:

"If the conveyance does not expressly grant the right to extract coal by strip mining methods, the surface-subsurface legal relationship shall be determined under the law of this state." R.C. 1513.07(E)(2)(e)(iii).

TOVCC's property right to the coal in seam # 8 has been established through a series of deeds conveyed by Simpson's predecessors in interest, and adjudicated in *Ohio Valley Coal Co. v. E. Ohio Gas Co.* (Jan. 28, 1992), Belmont C.P. No. 91–CIV–210, unreported, which held TOVCC's superior mining rights predated and superseded the after-acquired easement rights of East Ohio Gas Company.

Any claim of damage to other mineral estates is subject to civil litigation, and not within the purview of the division chief when considering whether a permit should be issued. The duties imposed upon the chief are specifically enumerated in R.C. 1513.02. There is no duty to analyze the potential impact on remaining coal seams or other natural resources which may or may not be developed by the landowner. It is not the function of this court to impose a duty on the division chief that is not clearly stated in the law. The legislature is the appropriate body to delineate a further duty on the chief or the commission if it so chooses. As the reclamation commission did not abuse its discretion, Simpson's first assignment of error is meritless.

Simpson's second assignment of error was not raised before the reclamation commission; rather, it is being raised in this court for the first time:

"The Reclamation Commission is to make a determination as to whether proposed mining will adversely affect any place listed in the national register of historic places."

█ After the hearing before the chief, apparently Simpson applied to have his home listed in the National Register of Historic Places. If a property is so registered at the time a mining permit is applied for, R.C. 1513.073(D)(3) requires approval from the chief and the governmental agency with jurisdiction over the property to issue a permit. Simpson argues here, for the first time, that the commission should have taken that potential designation into consideration. To buttress the argument, he attached to his brief a copy of a letter placing his home on the National Register.

This court is not the forum to raise this issue for the first time. "[A]n appellate court will not consider any error which counsel for a party complaining of the [trier of fact's] judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Dressler Coal Co. v. Div. of Reclamation, Ohio Dept. of Natural Resources* (Apr. 18, 1986), Muskingham App. No. CA–85–35, unreported, 1986 WL 4773, citing *State v. Childs* (1968), 14 Ohio St.2d 56, 43 O.O.2d 119, 236 N.E.2d 545, paragraph three of the syllabus. Moreover, we cannot and will not consider "evidence" which appellant attempts to submit for our consideration. We are confined to resolving cases based upon the record. App.R. 9 and 12(A)(1)(b). Therefore, Simpson's second assignment of error is meritless.

For the preceding reasons, we find both of Simpson's assignments of error to be meritless. Accordingly, the decision of the commission is affirmed.

*Decision affirmed.*

GENE DONOFRIO and WAITE, JJ., concur.