[Cite as *Columbia Gas Transm., L.L.C. v. The Ohio Valley Coal Co.*, 2019-Ohio-1004.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Columbia Gas Transmission, LLC,                    :

       Plaintiff-Appellant/                            :
       Cross-Appellee,                                                    No. 17AP-413

                                                      :          (C.P.C. No. 12CV-14546)

v.
                                                      :          (REGULAR CALENDAR)

The Ohio Valley Coal Company c/o
CT Corporation System et al.,                      :

       Defendants-Appellees/                           :
       Cross-Appellants.

                                                      :

D E C I S I O N

Rendered on March 21, 2019

**On brief**: *Barnes & Thornburg LLP, Kevin R. McDermott*;
*McDonald Hopkins LLC, Dan L. Makee, Richard W. Cline*, and
*Joseph M. Muska*, for appellant.     **Argued**: *Kevin R.
McDermott.*

**On brief**: *Dinsmore & Shohl LLP, Douglas J. Feichtner*,
*Thomas M. Connor*, and *Vladimir P. Belo*, for appellees.
**Argued**: *Thomas M. Connor*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1}     This case arises from a dispute between a natural gas pipeline operator and a
coal mine operator over liability for the cost of preventive measures to protect a gas pipeline
from subsidence damage caused by subterranean coal mining. Both the pipeline operator
and mining companies have appealed from the final judgment of the Franklin County Court
of Common Pleas.

{¶ 2} Plaintiff-appellant/cross-appellee Columbia Gas Transmission, LLC, ("Columbia") operates and maintains a high-pressure gas pipeline, part of which lies across coal-bearing lands in Belmont County, Ohio. Defendants-appellees/cross-appellants Ohio Valley Coal Company ("OVC") and Consolidated Land Company ("Consolidated") are related business entities that hold interests in the underlying coal. Consolidated's predecessors-in-interest obtained their mineral rights by way of coal severance deeds obtained in the early 20th century. These deeds contain a subsidence damage waiver allowing the owner of mineral rights to extract the coal without liability to surface landowners for subsidence damage to land or structures. There is no dispute that the severance deeds purchased by Consolidated's predecessors long pre-date the rights of way obtained by Columbia from surface property owners to install and maintain its pipeline.

{¶ 3} OVC leased certain tracts from Consolidated, and has the right to conduct long-wall mining under mining permits issued by the Ohio Department of Natural Resources ("ODNR") for the tracts identified as D-360-23 and D-360-25 (the "mining permit area"). When OVC gave notice of its plan to extract the coal from the mining permit area using a long-wall mining technique that would inevitably lead to surface subsidence, Columbia took steps to protect its pipeline from the effects of such subsidence. This involved excavation to expose the pipeline, installation of strain measuring equipment, and adjustment or support work to prevent damage as the subsidence occurred. After the subsidence stabilized, Columbia undertook renewal of the pipeline's exterior protection layers, which were affected by excavation and exposure, and reburied the pipeline. Columbia also replaced entirely some pipeline components that were not at the absolute end of their useful lives, but nonetheless old enough to warrant convenient replacement while the pipeline was exposed.

{¶ 4} After undertaking these preventive measures at its own expense, Columbia sued under R.C. 1513.15 to recover those costs from OVC and Consolidated. Columbia also sought a declaratory judgment that the liability waivers in the coal severance deeds were unenforceable under Ohio and federal law governing mining activity, and sought to quiet title concerning the status of its rights-of-way underlying the pipeline. OVC and Consolidated counterclaimed seeking a declaratory judgment establishing that their

superior property interests allowed them to pursue mining activity without liability to Columbia.

{¶ 5}  The trial court first considered the matter on cross-motions for summary judgment as to liability only.  The trial court held OVC was not liable for pre-mining mitigation or prevention expenses incurred by Columbia.  The trial court also ruled, however, that Columbia's pipeline was a "structure" as defined in Ohio Adm.Code 1501:13-12-03(F), and that OVC was liable for any actual damage (as opposed to mitigation or prevention expense) incurred by Columbia as a result of mining activity.  The court based this liability for post-mining subsidence damage on the conclusion that the liability waivers contained in the coal severance deeds were invalid because they conflicted with pertinent federal and state statutes: the Federal Surface Mining Control and Reclamation Act of 1977 ("SMCRA") and the Ohio Surface Mining Control and Reclamation Act ("Ohio SMCRA").

{¶ 6}  The damages phase of the case was then tried to the bench.  The trial court rendered a decision on December 29, 2016.  The court reaffirmed its prior rulings that as a matter of law OVC was not liable for pre-mining mitigation expenses incurred by Columbia, that the liability waivers in the coal severance deeds were superseded by applicable statutes and regulations, and that OVC was liable for any post-mining subsidence damage suffered by Columbia.  The court made factual findings that long-wall mining was a permissible mining method of extracting coal in Ohio, and was the primary method contemplated under OVC's permits granted by ODNR. The court further found that long-wall mining, unlike other methods of subterranean mining such as the room-and-pillar method, results in immediate and unavoidable subsidence as the mining activity progresses.  The court noted the parties' stipulation that Columbia's decision to excavate the pipeline and undertake pre-mining protection and prevention was reasonable in light of the comparatively high repair cost and danger to the public that would have resulted from a failure to take preventive measures in anticipation of the inevitable subsidence.

{¶ 7}  The trial court further found, however, that the evidence presented at trial did not support occurrence of any subsidence damage to Columbia's pipeline, and OVC and Consolidated therefore were not liable to Columbia for any damages. Aside from the question of statutory nullification of the subsidence damage waivers, the court also expressed doubt as to whether OVC actually held by lease any waiver rights under the coal

severance deeds. The court questioned whether the waivers had survived the physical destruction of some lease recordation documents lost in a flood.[1]

{¶ 8} Despite finding partially in favor of Columbia on Columbia's claim for a declaratory judgment by ruling that the subsidence damage waivers were unenforceable by application of the SMCRA and Ohio SMCRA, the trial court globally entered judgment against Columbia on its declaratory judgment claim, quiet title claim, and claim for monetary damages. The court correspondingly entered judgment in favor of OVC and Consolidated on their declaratory judgment claim.

{¶ 9} After the trial court rendered its decision and judgment, Columbia filed a motion to "amend the court's decision and entry on jury waived trial pursuant to Rule 59(A)." The thrust of this motion was that the trial court's December 29, 2016 judgment was internally inconsistent because the court had specifically held that the subsidence damage waivers in the coal severance deeds were unenforceable where they contravened pertinent statutes, but where there was clear evidence of post-subsidence damage incurred by Columbia, the court had failed to award compensation. Columbia also argued the court failed to properly identify the pre-mining mitigation expenses incurred by Columbia to protect its pipeline as "damages" directly attributable to the coal mining operation, since the only alternative under the court's interpretation of the law would have been to forgo mitigation and incur much greater damage by allowing the pipeline to be physically damaged and put out of service by subsidence. Columbia urges this limited interpretation of damages is inconsistent with common-law concepts of damages and mitigation, and invites both waste of resources and risk to the public.

{¶ 10} In addressing the motion to amend filed by Columbia, the court determined it was not required to determine whether this was an application for reconsideration of a final judgment, which would be a nullity at the trial level, or an actual application for a new trial pursuant to Civ.R. 59(A)(1) through (7). The court noted the motion did not call for an actual reiteration of trial proceedings with new evidence but, instead, asked the court to reconsider its findings of fact and conclusions of law and modify its judgment. The trial

---

[1] We note here that the trial court's doubts in this respect were unwarranted, as the parties had removed this evidentiary issue by stipulation. Subsequent analysis in this decision will accordingly assume that OVC held all rights available to it as lessor of the coal severance deeds.

court concluded that, whatever relief the motion sought, it was not well-taken, and the court would not modify its judgment.

{¶ 11} Columbia timely appeals[2] and brings the following three assignments of error:

> [I.] The Trial Court Erred As A Matter Of Law When It Did Not Find That [Columbia] Was Entitled To Damages Under R.C. 1513.15(H) For OVC's Direct And Express Violations Of Ohio SMCRA And The Permits And When It Found That OVC Is Not Liable To [Columbia] For Subsidence-Related Damages, Including Mitigation Expenses, Directly And Proximately Caused By OVC's Destructive Longwall Mining.
>
> [II.] The Trial Court Erred As A Matter Of Law When It Failed To Award [Columbia] Post-Subsidence Damages.
>
> [III.] The Trial Court Erred When It Denied [Columbia's] Rule 59(A) Motion.

{¶ 12} Consolidated and OVC jointly bring a conditional cross-appeal under App.R. 3(C)(1) and Loc.R. 8(D) and assert the following assignment of error:

> The Trial Court erred in declaring as a matter of law that OVC was liable to repair or compensate for material damage to [Columbia's] pipeline caused by subsidence.

{¶ 13} The appeal therefore presents four issues sequentially to be addressed: (1) whether the trial court erred in concluding that the subsidence damage waivers in the coal severance deeds are unenforceable to the extent they conflict with Ohio's version of SMCRA, (2) whether deficiencies in OVC's pre-mining permit application and mitigation planning give rise to liability for surface damage, (3) whether the trial court erred in limiting the definition of "damages" under SMCRA regulations to exclude pre-mining mitigation measures undertaken by Columbia to avoid even greater expenses that would have occurred had the pipeline been allowed to suffer damage after the mining had taken place, and (4) whether the trial court erred in finding that certain post-mining surface damage to Columbia's pipeline right-of-way was not related to subsidence caused by long-wall coal mining.

---

[2] We previously denied OVC and Consolidated's motion to dismiss the appeal as untimely. *Columbia Gas Transmission, LLC v. Ohio Valley Coal Co.*, 10th Dist. No. 17AP-413 (Aug. 29, 2018 journal entry).

{¶ 14} We first address the issue of whether the subsidence liability waivers found in the coal severance deeds are nullified by application of Ohio law protecting the rights of surface landowners. This issue arises under Columbia's first assignment of error and OVC and Consolidated's sole assignment of error on cross-appeal. Because OVC and Consolidated have made their appeal conditional upon the granting of relief to Columbia, any conclusion reached here that does not result in an award of damages to Columbia will not require further discussion of the arguments and alleged error raised in the cross-appeal.

{¶ 15} Columbia does not dispute that the coal severance deeds, and their subsidence damage waivers, long pre-date Columbia's acquisition of surface rights to construct its pipeline. As observed by the trial court, when Columbia acquired its pipeline rights-of-way, it could take no greater estate than its grantors could convey, so the surface property was subject to the long held mining rights, including the subsidence damage waivers. *See generally Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 317-18 (1996). Subsidence waivers remain generally enforceable against surface owners in Ohio where they do not conflict with subsequent legislation. *Consol. Land Co. v. Capstone Holding Co.*, 7th Dist. No. 02-BA-22, 2002-Ohio-7378; *Am. Energy Co. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199 (7th Dist.2007).

{¶ 16} The trial court accordingly concluded that "the superior property rights enjoyed by [OVC] result in its virtually unfettered right to mine the coal in the areas critical to this case." (Dec. 29, 2016 Decision & Entry at 15.) That broad statement by the trial court, however, was only intended to set the foundation for the next question, which is whether those "unfettered rights" are now limited by additional statutory protection afforded to surface landowners. The trial court accordingly analyzed the pertinent statutes and went on to conclude "there is no credible evidence to support the existence of any [subsidence damages] waiver language that is enforceable in this case." (Dec. 29, 2016 Decision & Entry at 7.) The trial court thus reached the clear legal conclusion that the liability waivers were unenforceable against Columbia as a matter of Ohio law.

{¶ 17} This aspect of the case was decided by the trial court on summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing

the motion. *Tokles & Son v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 18} An appellate court's review of summary judgment is de novo. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.). Our review grants no deference to the trial court's determination. *Zurz v. 770 West Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 19} The United States Congress enacted the SMCRA in 1977 to establish a nationwide program to prevent economic, societal, and environmental harm from the adverse effects from surface coal mining operations. 30 U.S. Code 1201(k); *Bragg v. W. Va. Coal Assn.*, 248 F.3d 275, 288 (4th Cir.2001). Pursuant to the act, Congress created the Office of Surface Mining Reclamation and Enforcement ("OSM"), a division of the United States Department of the Interior.

{¶ 20} Congress allowed states, however, to regulate their own surface mining programs by enacting comparable regulation as long as it did not conflict with SMCRA. 30 U.S. Code 1201(g); *Hodel v. Va. Surface Mining & Reclamation Assn.*, 452 U.S. 264, 289 (1981). States electing to create their own regulatory structure could assume exclusive jurisdiction on the topic only as long as they obtain prior approval of the planned regulatory schemes by the Department of the Interior. *See generally Molinary v. Powell Mountain Coal Co.*, 125 F.3d 231, 234 (4th Cir.1997). The state scheme so enacted could set more stringent standards, but could not lower the standards set by SMCRA. *Bragg* at 288. Because states may "ratchet up" the protection afforded by their version of the federal SMCRA, states could require full compensation for all subsidence-related damage to commercial and non-commercial structures even when federal law does not require this. *See, e.g., Old Ben Coal Co. v. Dept. of Mines & Minerals*, 204 Ill.App.3d 1062 (5th Dist.1990); *Shell Pipe Line Corp. v. Old Ben Coal Co.*, 677 F.Supp. 572 (S.D.Ill.1988).

{¶ 21} Ohio accordingly passed legislation to regulate its own mining industry in the form of R.C. Chapter 1513 in 1978. ODNR, through its Division of Mineral Resources

Management was granted authority to adopt rules in furtherance of regulation. R.C. 1513.02. Ohio's regulatory scheme was first approved by OSM in 1982.

{¶ 22} Ohio Adm.Code 1501:13-11-02(C) provides that coal mining operations shall "be conducted in a manner which minimizes damage, destruction, or disruption of services provided by [gas pipelines]." Ohio administrative regulations promulgated under the Ohio SMCRA also contain specific provisions relating to subsidence-related damage to structures. At the time this case arose, the pertinent regulatory language read as follows:

> Any agreement between the permittee and a surface owner which addresses the repair or the compensation for damage to the surface owner's structures shall take precedence over the provisions of this rule and the provisions of this rule shall not apply to any damage to such structures.

Ohio Adm.Code 1501:13-12-03(E).

> If the permittee and the owner of structures have no agreement for repair and compensation, the permittee shall correct material damage caused to any structures or facilities by repairing the damage or shall compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from subsidence.

Ohio Adm.Code 1501:13-12-03(F).[3]

{¶ 23} The parties acknowledge there is no case law from Ohio courts interpreting application of these rules in pipeline cases.

{¶ 24} Under the federal SMCRA, statutory nullification of subsidence-liability waivers applies to residences and non-commercial structures. 30 C.F.R. 817.121(c)(2), as amended by the Energy Policy Act of 1992, 106 Stat. 2776. *See generally Natl. Mining Assn. v. Babbitt*, 172 F.3d 906 (1999). OVC and Consolidated point out that while this change increased the minimum protection afforded to surface landowners under federal law, thus forming a higher "floor" for corresponding state regulations, it would not extend to protection to pipelines, since they are obviously not residences or non-commercial

---

[3] This section was modified as follows effective June 28, 2018: "If the permittee and the owner of structures have no agreement for repair and compensation, the permittee shall promptly repair, or compensate the owner for, material damage resulting from subsidence caused to any *non-commercial building or occupied residential dwelling and structures related thereto* that existed at the time of mining." (Emphasis added.) As a result, we must make clear that the regulatory analysis applied in the present case is limited to the former version of Ohio Adm.Code 1501:13-12-03(F), and may not bear on future cases.

structures.  While not applicable in the present case, Ohio's most recent version of Ohio Adm.Code 1501:13-12-03(F), as amended in 2018, is comparable to 30 C.F.R. 817.121(c)(2) in its specific reference to non-commercial structures.

{¶ 25}  OVC and Consolidated rely on a recent case decided by the Supreme Court of Appeals of West Virginia, *Texas E. Transm., LP v. W. Virginia Dept. of Environmental Protection*, W.V. Sup.Ct.App. No. 16-0827 (Nov. 16, 2017), addressing damage liability for subsidence under a pipeline.  In that case, the court looked to state and federal law and concluded that West Virginia's version of SMCRA, the West Virginia Surface Coal Mining and Reclamation Rule, did not abrogate the coal mine operator's common-law right to subside, and corresponding right to enforce subsidence waivers in coal severance deeds. *Id.* at paragraph three of the syllabus. The court further held that the West Virginia common law, which enforced subsidence waivers for all classes of property, was potentially in conflict with 30 C.F.R. 817.121(c)'s protection for non-commercial surface structures, but remained valid with respect to commercial structures such as pipelines.  *Id.* at 30-32. As a result, the court concluded, a pipeline operator could not recover subsidence compensation from the coal mine operator.

{¶ 26}  The enabling statute for Ohio Adm.Code 1501:13-12-03(F) is R.C. 1513.02, which states in pertinent part that the division of mineral resources management shall adopt rules "to meet the requirements of" the federal SMCRA. Because state law can impose more stringent requirements on coal mine operators, the unavailability or absence of such compensation under cases interpreting the federal SMCRA is not necessarily determinative in our interpretation of Ohio law. Likewise, state law may vary materially as long as it meets the minimum protection afforded by SMCRA, and decisions from other states are not particularly instructive to interpretation of Ohio's SMCRA.

{¶ 27} We begin with the solidly established and long held principle that "[w]here the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. Unless "words are otherwise defined or a contrary intent is clearly expressed," we must give words contained in a statute "their plain and ordinary meaning." *Cincinnati Metro. Hous. Auth. v. Morgan*, 104 Ohio St.3d 445, 2004-

Ohio-6554, ¶ 6, citing *Coventry Towers, Inc. v. Strongsville*, 18 Ohio St.3d 120, 122 (1985) and *Youngstown Club v. Porterfield*, 21 Ohio St.2d 83, 86 (1970). Only when the words of a statute are ambiguous, are based on an uncertain meaning, or in apparent conflict with other provisions, will a court resort to interpretation of a statute. *Drake-Lassie v. State Farm Ins. Cos.*, 129 Ohio App.3d 781, 788 (10th Dist.1998), citing *Kroff v. Amrhein*, 94 Ohio St. 282 (1916). When statutory language is plain and unambiguous and conveys a clear and definite meaning, courts need not resort to rules of statutory interpretation to determine the meaning of the statute. *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio-3264, ¶ 15; *State v. McConville*, 124 Ohio St.3d 556, 2010-Ohio-958, ¶ 8. "To interpret what is already plain 'is not interpretation but legislation, which is not the function of the courts.' " *Hudson* at ¶ 31, quoting *Iddings v. Bd. of Edn.*, 155 Ohio St. 287, 290 (1951).

{¶ 28} "We apply the same rules of construction to interpreting administrative regulations as we do to interpreting statutory provisions." *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, ¶ 19. We therefore "give the words of the administrative rules their plain and ordinary meaning to discern the intent of the rule." *Id.* As with the application of a statute, when the language of a rule is plain and unambiguous and conveys a clear and definite meaning, it must be applied, not interpreted. *State ex rel. Daily Servs., L.L.C. v. Morrison*, ____ Ohio St.3d ____, 2018-Ohio-2151, ¶ 33, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000); *Sears* at paragraph five of the syllabus.

{¶ 29} As noted by the trial court, there was no pre-mining agreement between Columbia and the coal operators requiring repair or compensation for subsidence damage. Ohio Adm.Code 1501:13-12-03(E) provides for such agreements, and in the absence of such agreements compensation is determined under Ohio Adm.Code 1501:13-12-03(F).

{¶ 30} The trial court here found that, under Ohio's version of SMCRA, natural gas pipelines were "structures or facilities" within the scope of former Ohio Adm.Code 1501:13-12-03(F). To this end, the trial court extensively examined the term "structures" as used in former Ohio Adm.Code 1501:13-12-03(F) and concluded the term should be given its broadest application to include pipelines. Unlike the federal version, SMCRA regulations (and current Ohio Adm.Code 1501:13-12-03(F)), former Ohio Adm.Code 1501:13-12-03(F) makes no distinction between commercial and non-commercial structures. While

Columbia's pipeline is inherently a commercial structure, the trial court correctly concluded this was not a factor in application of former Ohio Adm.Code 1501:13-12-03(F).

{¶ 31} In the absence of a special definition provided for the terms "structure" or "facility" as used in R.C. Chapter 1501 and Ohio Adm.Code 1501:13-12-03(F), the trial court looked to dictionary definitions and gave the terms their usual and customary meaning. As the court particularly observed, the regulation is certainly drafted with an eye toward broader protection than simply habitations or occupiable improvements to land; the decision to add a second class of protected improvements guards against an overly restrictive reading of "structure": "While a 'structure' is generally countenanced as a building, a 'facility' is certainly broad enough to encompass pipelines." We see no error in the trial court's reading of the statute.

{¶ 32} Moreover, the chief of ODNR's Division of Mines and Reclamation has given evidence in other judicial proceedings that clearly contemplates the broader protection contemplated by former Ohio Adm.Code 1501:13-12-03(F), extending even to a mere fence:

> Regarding Simpson's allegation of material damage to surface land, the Chief responded at paragraph 16:
>
> **RESPONSE**: Ohio Administrative code (OAC) Section 1501:13-12-03 provides, in part, that the underground mine operator shall correct any material damage caused to surface lands, to the extent technologically and economically feasible, *by restoring the land* **surface** *to a condition capable of maintaining the value and reasonably foreseeable use(s) which it was capable of supporting before subsidence*. The operator is required to repair material damage to surface lands.
>
> The Division interprets the law to state that underground mine operators shall be responsible for all subsidence damage. OAC Section 1501:13-12-03 requires repair or compensation for damage to structures caused by an underground mine operation. Division policy further states "that all water supplies will be replaced, all structures repaired or compensated for, and all damages to the surface land repaired." A fence is a structure and must be repaired in accordance with the provisions of OAC Section 1501:13-12-03.

(Emphasis sic.) *Simpson v. Div. of Mines & Reclamation*, 145 Ohio App.3d 817, 821 (7th Dist.2001).

{¶ 33} Based on the forgoing, we find the trial court has properly applied the relevant federal and state statutes governing the obligations of OVC and Consolidated in this case, and the subsidence damages waivers found in the coal severance deeds are ineffective to curtail OVC's liability toward Columbia for damage to the pipeline.  Columbia was entitled to declaratory judgment on this issue.

{¶ 34} We now turn to the balance of Columbia's first assignment of error, which asserts the trial court, while correctly concluding that OVC and Consolidated could be liable despite the subsidence damage waivers in the coal severance deeds, improperly limited the scope of damages to exclude the cost of Columbia's pre-mining mitigation expenses.

{¶ 35} Columbia urges the application here of the "doctrine of avoidable consequences."  Under this, a person is required to use ordinary and reasonable care, diligence and prudence to minimize the damages resulting from another's wrongful act or omission. " 'One whose legally protected interests have been endangered by the tortious conduct of another is entitled to recover the expenditures reasonably made or harm suffered in a reasonable effort to avert the harm threatened.' " *Thiergartner v. Ohio Grain Co.*, 3d Dist. No. 14-85-1 (Aug. 15, 1986), quoting Restatement of the Law 2d, Torts, Section 919 at 507 (1979).

{¶ 36} Ohio cases, however, generally use the term "mitigation" and invoke the concept of avoidable consequences to address the affirmative defense that the plaintiff failed to minimize loss *after* the tort occurred, when this defense is raised by the tortfeasor at trial: Mitigation of damages (or avoidable consequences) means that " 'one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of *reasonable effort* or expenditure after the commission of the tort.' " (Emphasis added.)   *Johnson v. Univ. Hosps. of Cleveland*, 44 Ohio St.3d 49, 57 (1989), quoting 4 Restatement of the Law 2d, Torts, Section 918(1) at 500 (1979).  "Thus, mitigation refers to actions taken after the commission of a tort, by which a party reduces the damages flowing from the tort." *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 297 (2d Dist.2000).

{¶ 37} Under these cases, the costs that Columbia seeks to recover here are not, strictly speaking, in the way of mitigation as the term is applied in Ohio law to a damages analysis, although the term's general dictionary definition may encompass the measures undertaken by Columbia to protect its pipeline.  The question is not, therefore, one of

mitigation of damages, but of the measure of damages incurred: the legally foreseeable damages directly flowing from the inevitable commencement of long-wall mining beneath the pipeline. This raises the concept of preventative damages, an ill-defined area of law generally, and one never clearly discussed in Ohio cases. Moreover, the case most closely on point has rejected any award of preventative damages on identical facts. *Shell Pipe Line* at 574-75 (confirming same coal operator's obligation under Illinois law to repair or compensate for post-mining surface damage, and invalidating subsidence damage waivers). Nonetheless, the inevitability of damage to pipeline structures once long-wall mining commenced, and the stipulated reasonableness of Columbia's preventive measures, make this an ideal case of first impression in Ohio to consider whether preventive measures may justify tort compensation.

{¶ 38} "Damages may include direct damages or consequential damages which were reasonably foreseeable at the time the tort was committed." *Scioto Mem. Hosp. Assn. v. Price Waterhouse & Co.*, 10th Dist. No. 90AP-1124 (Dec. 21, 1993). We agree with Columbia there would be an absurd result if, having established that subterranean mining operators are required to compensate surface landowners for subsidence damages, Columbia, acting as a responsible corporate citizen, chose to reduce those damages through extensive pre-mining preparation and yet could not recover for those costs. The onset of the "tort" here can be measured from the point that long-wall mining beneath the pipeline became inevitable with resulting subsidence. Moreover, the trial court's ruling inevitably thwarts the intent of the statutory scheme addressing subsidence damages. Such damages here would not only have included the certainty of higher pipeline repair costs incurred by Columbia, but imminent harm to the general public through interruption of natural gas supplies and potential hazardous leaks. The object of the statute could not be to force the surface landowner to multiply the actual damages incurred simply in order to ensure recovery from the mine operator.

{¶ 39} Having decided that the surface damage waivers are nullified by Ohio SMCRA, it follows that OVC would have been liable had subsidence caused a catastrophic pipeline failure. At that point, the mining operator would, of course, have defended on the basis of contributory negligence based on Columbia's imprudent refusal to take steps to prevent the catastrophe. As a result, the only legally coherent conclusion here is to apply

the foreseeability rule to measure Columbia's damages and include Columbia's prevention costs as a component of damages in this case. Columbia's decision to take steps to protect its pipeline was reasonable, and even compelled, once long-wall mining (and its associated immediate and inevitable subsidence) became inevitable underneath the property. The parties stipulated as much. The trial court erred in denying any award of damages and Columbia's first assignment of error is sustained and OVC and Consolidated's conditional cross-assignment of error is overruled.

{¶ 40} Columbia's second assignment of error asserts the trial court erred when it failed to award post-subsidence (i.e., non-preventative) damages. Columbia asserts there was clear evidence to support the existence of such damages. Because the trial court rejected these damages in part on the basis that they were insufficiently distinguished from the pre-mining preventative expenses, which it deemed not awardable, the assignment of error is sustained in part. We are unable to reach Columbia's manifest weight arguments regarding the extent of post-mining damages because the trial court must now revisit that evidence in light of our reversal of the basic premise under which the trial court denied all damages. We sustain the second assignment of error to the extent that it requires the trial court to re-examine the evidence regarding damages, and overrule it to the extent that it would mandate an award in the amount prayed for.

{¶ 41} Columbia's third assignment of error asserts the trial court erred in denying Columbia's Civ.R. 59(A) motion. On appeal, we review the trial court's ruling on motions for new trial under an abuse of discretion standard. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, ¶ 35. As discussed above, the motion for a new trial was not really a motion for a new trial but a motion for reconsideration; it did not seek to replace or enlarge the trial presentation of evidence, but sought to have the trial court reweigh the evidence already presented and change its conclusions. Our reversal of the trial court's predicate ruling that denied damages to Columbia render this assignment of error moot.

{¶ 42} In accordance with the forgoing, we sustain Columbia's first assignment of error and overrule OVC and Consolidated's sole cross-assignment of error. We overrule in part and sustain in part Columbia's second assignment of error, and render Columbia's third assignment of error moot. We reverse the judgment of the Franklin County Court of

Common Pleas, and remand this matter for a determination of damages under the standard set forth in this decision.

*Judgment reversed and cause remanded.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____