[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as
*Columbia Gas Transm., L.L.C. v. Ohio Valley Coal Co.*, Slip Opinion No. 2020-Ohio-6787.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6787

COLUMBIA GAS TRANSMISSION, L.L.C., APPELLEE, *v.* OHIO VALLEY COAL CO. ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbia Gas Transm., L.L.C. v. Ohio Valley Coal Co.*, Slip Opinion No. 2020-Ohio-6787.]**

*Administrative agency exceeded scope of its authority by adopting rule that requires mining operators to pay for damage to surface structures without regard to operator's having obtained surface-damage-liability waivers through coal-severance deeds—Former Ohio Adm.Code 1501:13-12-03(F) is invalid to the extent it exceeds federal law.*

(No. 2019-0838—Submitted August 4, 2020—Decided December 22, 2020.)

APPEAL from the Court of Appeals for Franklin County

No. 17AP-413, 2019-Ohio-1004.

_____

**DEWINE, J.**

{¶ 1} This case involves a dispute between a coal-mining company and the owner of a natural-gas pipeline over whether the pipeline owner may recover for damage caused to the pipeline as a result of mining. The mining company holds its interest in the coal underneath the lands through property deeds that severed the mineral interest from the surface estate. These deeds include provisions waiving liability for damage to the surface of the land caused by mining activities. The pipeline owner says that these surface-damage-liability waivers have been rendered invalid by a regulation written by an administrative agency requiring mining operators to pay for damage to surface structures as a result of subsidence from mining. We must decide who is correct.

{¶ 2} We conclude that the deed waivers are valid and enforceable. An administrative agency possesses only the authority that has been delegated to it by the legislature. And here, the General Assembly never gave the agency the authority to write a rule that would extinguish existing property rights beyond that which was mandated by federal law. Because the agency lacked statutory authority to adopt an administrative regulation invalidating the mining company's property interest, the deed waivers are valid. As a result, we reverse the judgment of the court of appeals and, on those grounds, reinstate the judgment of the trial court in favor of the mining company.

## I. The lower courts hold that the deed waivers are unenforceable

{¶ 3} Consolidated Land Company and Ohio Valley Coal Company (collectively, "Ohio Valley Coal") own the rights to coal reserves under certain tracts of land in Belmont County. The coal reserves lie beneath a natural-gas pipeline owned and operated by Columbia Gas Transmission, L.L.C.

{¶ 4} Ohio Valley Coal's mineral interests stem from early-20th-century deeds severing the coal estate from the surface estate. The coal-severance deeds granted Ohio Valley Coal's predecessors the right to mine without supporting the surface and contained an express waiver of claims for damage caused to the surface

estate. Columbia Gas subsequently acquired surface rights-of-way to run its pipeline across the land above the coal reserves.

{¶ 5} In 2010 and 2012, Ohio Valley Coal obtained permits to mine the land underneath Columbia Gas's pipeline. Before the mining began, Columbia Gas took measures to protect its pipeline from subsidence that was expected to occur as a result of the mining. The mining permits specified that Columbia Gas was responsible for protecting its pipeline from damage that might result from subsidence and required Ohio Valley Coal to ensure that Columbia Gas had taken steps to mitigate damage to the pipeline before the mining operation approached the pipeline.

{¶ 6} In 2012, Columbia Gas brought this action against Ohio Valley Coal pursuant to R.C. 1513.15(H), which authorizes an action for damages by "[a]ny person who is injured in person or property through the violation by any [coal mining] operator of any rule, requirement, order, or permit" adopted or issued under R.C. Chapter 1513. Columbia Gas sought compensation for the expenses it incurred for the measures it had taken to prevent damage to the pipeline as well as for alleged postmining damage to the pipeline. Ohio Valley Coal contended that the surface-damage-liability waivers contained in the coal-severance deeds protected it from any liability for damage. Both parties sought a declaratory judgment regarding the priority of the competing property rights and the validity and enforceability of the deed waivers.

{¶ 7} The trial court found that the coal-severance deeds predated the surface rights-of-way obtained for construction of the pipeline. The court therefore concluded that under the deeds containing the surface-damage-liability waivers, Ohio Valley Coal possessed superior property rights, resulting in its "virtually unfettered right to mine the coal in the areas critical to this case." The trial court's determinations as to the priority of the property interests and scope of the deed waivers are not disputed in this appeal.

**{¶ 8}** Although the trial court found that Ohio Valley Coal possessed superior property rights, it determined that the surface-damage-liability waivers had been invalidated by an administrative regulation adopted by the Ohio Department of Natural Resources ("ODNR") that required mining operators to pay for damage to surface structures. The regulation was adopted pursuant to Ohio's Surface Mining Control and Reclamation Act ("SMCRA"), codified in R.C. Chapter 1513. The version of the rule in effect during the mining operation and throughout the trial-court litigation provided that the mining operator "shall correct material damage caused to any structures or facilities by repairing the damage or shall compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from subsidence." Former Ohio Adm.Code 1501:13-12-03(F), 2010-2011 Ohio Monthly Record 2-1427, effective Oct. 28, 2010.

**{¶ 9}** Thus, the trial court concluded that Ohio Valley Coal could be held liable for damages under the administrative regulation. But because the rule required mining operators to pay only for damage "resulting from subsidence" from mining, the trial court concluded that Columbia Gas was not entitled to recover the costs of the preventive measures it had taken to protect the pipeline. The trial court found that Columbia Gas had not established that the pipeline had sustained damage as a result of subsidence. The trial court therefore denied Columbia Gas's claim for relief and entered judgment in favor of Ohio Valley Coal.

**{¶ 10}** Columbia Gas appealed the trial court's damages determination and Ohio Valley Coal cross-appealed the trial court's determination that the Ohio SMCRA had nullified its surface-damage-liability waivers. The Tenth District Court of Appeals agreed with the trial court's conclusion that the administrative regulation had rendered the deed waivers unenforceable. 2019-Ohio-1004, 126 N.E.3d 1203, ¶ 33. But it held that Columbia Gas could seek an award of damages for its preventive measures. *Id.* at ¶ 39. Although Columbia Gas sought damages pursuant to statute and had not alleged any tortious conduct on the part of Ohio

Valley Coal, the Tenth District applied a tort concept—the doctrine of avoidable consequences—to conclude that Columbia Gas could be compensated for efforts it took to mitigate damages. *Id.* at ¶ 35-36. It therefore reversed the judgment of the trial court on the damages issue and remanded the matter for a determination of damages. *Id.* at ¶ 42.

{¶ 11} We accepted Ohio Valley Coal's appeal, which sets forth three propositions of law: (1) "Ohio law does not permit reimbursement for preventive measures as damages before any tort has occurred"; (2) "When a regulation provides a specific remedy for a violation of its terms, no plaintiff may recover damages not provided for in the regulation or enabling statute"; and (3) "Ohio SMCRA does not abrogate the validity of surface damage waivers as to commercial structures." *See* 156 Ohio St.3d 1497, 2019-Ohio-3505, 130 N.E.3d 292. Thus, this appeal presents two overarching questions: Did the Ohio SMCRA abrogate the validity of surface-damage-liability waivers with respect to commercial structures? And, if so, does the administrative regulation authorize an award of damages for preventive measures?

{¶ 12} We begin by taking up the first question, which is advanced in the third proposition of law, and our resolution of that issue decides this case. Columbia Gas asserts that the administrative regulation "completely supplanted Ohio's common law" by nullifying the continued enforceability of surface-damage waivers in property deeds and as a result, Ohio Valley Coal must pay for damage it caused to Columbia Gas's pipeline and for the costs of preventive measures. Ohio Valley Coal counters that if the rule is read to abolish common-law property rights with respect to all surface-damage claims, it would go well beyond the scope of the authority granted to ODNR by the General Assembly.

{¶ 13} To determine the effect of the rule on the deed waivers, it is helpful to understand the regulatory framework under which the rule was adopted. We

therefore begin with an overview of the state and federal Surface Mining Control and Reclamation Acts.

## II. Ohio enacts SMCRA to comply with federal standards

{¶ 14} The federal SMCRA was passed in 1977 and is the main federal law regulating coal mining in the United States. 30 U.S.C. 1201 et seq. The federal act instituted programs for regulating active coal mines and reclaiming abandoned mines and lands adversely affected by mining. 30 U.S.C. 1202. Ohio implemented its own scheme, codified in R.C. Chapter 1513, to comply with the federal standards.

{¶ 15} The General Assembly granted ODNR authority to implement coal-mining regulations through R.C. 1513.02. Relevant here, the ODNR is directed to "[a]dopt, amend, and rescind rules" to "administer and enforce" R.C. Chapter 1513 and "[t]o meet the requirements of" the federal SMCRA. R.C. 1513.02(A)(1). Acting under the authority of these directives, ODNR promulgated rules in Ohio Adm.Code 1501:13.

### A. *The original version of the regulation upheld existing property rights*

{¶ 16} The Ohio regulation at issue in this case was adopted in 1983. Under federal law at that time, state-law property rights remained enforceable with respect to damage to structures or facilities. The federal regulations provided that a mining operator needed to repair or provide compensation for damage to structures only "[t]o the extent required under State law." Former 30 C.F.R. 817.121(c)(2), 48 Fed.Reg. 24638, 24652 (1983); *Natl. Wildlife Fedn. v. Lujan*, 928 F.2d 453, 456 (D.C.Cir.1991). Thus, as long as a liability waiver was valid under state law, the waiver would be given effect as to damage to structures. The federal provision left it up to the states to decide whether mining operators should be required to pay for damage caused to structures by subsidence irrespective of other contractual and property rights.

{¶ 17} As adopted in 1983, the Ohio regulation required a mining operator to "correct material damage caused to *any structures or facilities* by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from subsidence." (Emphasis added.) Former Ohio Adm.Code 1501:13-12-03(D)(2) (1983), 1983-1984 Ohio Monthly Record 443, effective Nov. 23, 1983. But Ohio's rule recognized existing contractual and property rights: if the mining operator had been relieved of liability "by property conveyance or agreement with the owner of the structure or facility or his predecessor in title," then the operator was exempt from paying for damage to structures under the regulation.[1] Former Ohio Adm.Code 1501:13-12-03(D)(2)(b) (1983).

### B. ODNR expanded the regulation to abolish property rights

{¶ 18} This changed in 1989, when ODNR expanded the provision to eliminate existing common-law property and contractual rights. The 1989 rule continued to require that mining operators correct or compensate for "material damage caused to any structures or facilities." Former Ohio Adm.Code 1501:13-12-03(F), 1989-1990 Ohio Monthly Record 90, effective Aug. 19, 1989. But ODNR removed the provision exempting the operator from the rule if it had been relieved of liability for damage to structures under the terms of a deed. Thus, under the regulation following the 1989 amendments, mining operators were required to repair or pay for damage caused to any structures or facilities.[2]

---

1. Since 1983, Ohio's regulation has prohibited underground mining under certain structures, including public buildings, churches, schools, and hospitals. *See* Ohio Adm.Code 1501:13-12-03(J), formerly at Ohio Adm.Code 1501:13-12-03(E) (1983). The analysis in this opinion does not apply to these exempted structures.

2. Under the 1989 rule, the mining operator and the owner of structures were permitted to enter into an agreement before mining began addressing repair and compensation for damage. Former Ohio Adm.Code 1501:13-12-03(E) (1989). But this exception did not address rights obtained through property transfers, and as the trial court found in this case, Ohio Valley Coal and Columbia Gas did not themselves enter into an agreement prior to mining.

### *C. Amendments to the federal regulations require operators to pay for damage caused to certain structures—not including commercial pipelines*

{¶ 19} The federal regulations were amended in 1995 to require mining operators to "promptly repair, or compensate the owner for, material damage resulting from subsidence caused to *any non-commercial building or occupied residential dwelling or structure related thereto.*" (Emphasis added.) 30 C.F.R. 817.121(c)(2), 60 Fed.Reg. 16722, 16749-16750 (1995). The federal regulations continued to defer to state law with respect to compensation for damage to other structures. 30 C.F.R. 817.121(c)(3), 60 Fed.Reg. at 16750. Thus, while the federal regulations instituted protections for certain noncommercial structures, they still did not require compensation for damage caused to commercial pipelines.

{¶ 20} Despite the changes to the federal provision, the broad "any structures or facilities" language was retained in the 2010 version of Ohio Adm.Code 1501:13-12-03(F). Then in 2018, after the trial-court proceedings in this case had concluded, ODNR removed the "any structures or facilities" language and replaced it with language mandating that the mining operator pay for subsidence damage to "any non-commercial building or occupied residential dwelling and structures related thereto." Ohio Adm.Code 1501:13-12-03(F) (2018). Consequently, the Ohio regulation now limits a mining operator's liability for damage to structures to the requirements under federal law, and the operator's property rights otherwise remain intact. But because the current version of the regulation was adopted after the mining and the trial-court proceedings in this case had concluded, the lower courts determined Ohio Valley Coal's liability under the 2010 version of the rule.

{¶ 21} To recap, in 1989, at a time when federal regulations left state-law property rights intact with respect to liability waivers for damage to structures, ODNR adopted a provision abolishing those rights. And although the federal regulations were subsequently amended to limit the enforceability of liability

8

waivers with respect to noncommercial and residential structures, ODNR nevertheless retained the comprehensive requirement that mining operators pay for damage to "any structures or facilities" in the 2010 version of the Ohio rule. This leads to the central question in this case: Did ODNR have authority to adopt regulations rendering preexisting property rights void? The short answer is no.

### III. The requirement of former Ohio Adm.Code 1501:13-12-03(F) that mining operators pay for damage to commercial structures exceeded the scope of the enabling statute

{¶ 22} The Tenth District Court of Appeals concluded that former Ohio Adm.Code 1501:13-12-03(F) (2010) abrogated the surface-damage-liability waivers and required mining operators to repair or compensate for subsidence damage to pipelines. In so holding, the Tenth District noted that states were free to go beyond the minimum federal requirements and provide greater protections for surface structures. 2019-Ohio-1004, 126 N.E.3d 1203, at ¶ 26. That is true, but the court glossed over the matter of who gets to decide whether the state is going to abrogate common-law property rights. It is the General Assembly—not ODNR—that gets to set such policies. *See McFee v. Nursing Care Mgmt. of Am., Inc.*, 126 Ohio St.3d 183, 2010-Ohio-2744, 931 N.E.2d 1069, ¶ 25, quoting *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 41 ("The General Assembly sets public policy, and administrative agencies, when granted rulemaking power, 'develop and administer' those policies").

{¶ 23} Administrative agencies possess only such power as has been delegated to them. *D.A.B.E.* at ¶ 38. When an agency goes beyond the authority that has been delegated to it, it usurps the legislative role of establishing public policy and thereby generates separation-of-powers concerns. *McFee* at ¶ 24; *D.A.B.E.* at ¶ 41. "An agency exceeds its grant of authority when it creates rules that reflect a public policy not expressed in the governing statute." *McFee* at ¶ 25, citing *D.A.B.E.* at ¶ 41.

{¶ 24} Thus, we must look to R.C. 1513.02 to determine whether ODNR had the authority to adopt regulations that abrogate Ohio Valley Coal's property rights in the liability waivers contained in the coal-severance deeds. That statute authorized ODNR to establish regulations "to meet" federal requirements. R.C. 1513.02(A)(1). From 1983 to 1995, there were no federal requirements regarding a mining operator's obligation to repair or compensate for damage to structures caused by subsidence from underground mining. Yet during that time, ODNR adopted a rule requiring mining operators to pay for subsidence damage to "any structures or facilities"—purporting to render invalid subsurface owners' property interest in deed liability waivers. Former Ohio Adm.Code 1501:13-12-03 (1989). And while the federal regulation was changed in 1995 to require that mining operators pay for damage caused to "any non-commercial building or occupied residential dwelling or structure related thereto," 30 C.F.R. 817.121(c)(2), 60 Fed.Reg. at 16749-16750, ODNR retained the broad "any structures or facilities" language when it adopted the 2010 version of the Ohio rule. Ohio Adm.Code 1501:13-12-03(F) (2010). It is clear, then, that ODNR went beyond its charge to enact regulations "to meet" the federal requirements.

{¶ 25} One might argue that in authorizing the agency "to meet" federal requirements, the legislature meant to allow the agency to provide greater protections for surface property owners than those mandated under federal law. And while such an argument might have some appeal in another context, it has little force here. We are dealing with an administrative regulation that abrogates common-law property rights. And it is well settled that we will not presume the legislature " 'to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention.' " *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 17, quoting *State ex rel. Hunt v. Fronizer*, 77 Ohio St. 7, 16, 82 N.E. 518 (1907).

There is simply no language in the enabling statute, R.C. 1513.02, remotely suggesting an intent to revoke existing property rights.

{¶ 26} Because the General Assembly did not establish a policy of abolishing longstanding property rights, ODNR exceeded the scope of its authority by adopting a rule that requires mining operators to pay for damage to surface structures without regard to the operator's having obtained surface-damage-liability waivers through coal-severance deeds. We therefore hold that former Ohio Adm.Code 1501:13-12-03(F) (2010) is invalid to the extent that it exceeds federal law to nullify liability waivers as to damage to commercial structures. Our resolution of this proposition of law renders the remaining propositions of law moot.

## IV. Conclusion

{¶ 27} The administrative agency lacked authority under Ohio's SMCRA to enact a regulation that requires a mining operator to pay damages irrespective of common-law property rights, to the extent that such rights have not been limited by federal law. Thus, the surface-damage-liability waivers contained in the coal-severance deeds remain valid and enforceable with respect to damage caused to commercial pipelines as a result of subsidence from mining. As a result, Columbia Gas is not entitled to recover from Ohio Valley Coal for damage to its pipeline caused by mining and there is no need to remand this case for any further determination on the issue of damages. We therefore reverse the judgment of the court of appeals and reinstate the judgment of the trial court in favor of Ohio Valley Coal.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DONNELLY, and STEWART, JJ., concur.

FRENCH, J., concurs in judgment only.

_____

McDonald Hopkins, L.L.C., Dan L. Makee, Richard W. Cline, and Joseph M. Muska, for appellee.

Dinsmore & Shohl, L.L.P., Douglas J. Feichtner, and Thomas M. Connor, for appellants.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, for amicus curiae, Ohio Attorney General Dave Yost.

_____